**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

***EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT
DISCOVERY FOR USE IN FOREIGN PROCEEDINGS
<u>PURSUANT TO 28 U.S.C. § 1782</u>**

Based on the concurrently filed Memorandum of Law and the supporting Declarations of Douglas Hallward-Driemeier, Kevin Walsh, and Stéphane de Navacelle, Petitioners Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity ("QC") (collectively, the "Petitioners") hereby respectfully apply to this Court for an Order pursuant to 28 U.S.C § 1782 and Federal Rules of Civil Procedure 26, 30, 34, and 45 permitting QNB and QC to conduct discovery for use in foreign proceedings, such discovery being in the form of the subpoenas attached as Exhibit 2 to the Declaration of Douglas Hallward-Driemeier.

Dated: March 12, 2024                    Respectfully submitted,


                                         */s/ Douglas Hallward-Driemeier*
                                         Douglas Hallward-Driemeier (D.C. Bar No. 994052)
                                         **ROPES & GRAY LLP**
                                         2099 Pennsylvania Avenue, N.W.
                                         Washington, DC 20006-6807
                                         Tel: (202) 508-4776
                                         douglas.hallward-driemeier@ropesgray.com


                                         Michael G. McGovern (*pro hac vice forthcoming*)
                                         **ROPES & GRAY LLP**
                                         1211 Avenue of the Americas
                                         New York, NY  10036-8704
                                         Tel: (212) 596-9000
                                         michael.mcgovern@ropesgray.com

                                         *Counsel for Petitioner Qatar National Bank
                                         (Q.P.S.C.)*


                                         John M. Hillebrecht (*pro hac vice forthcoming*)
                                         Kevin Walsh (*pro hac vice forthcoming*)
                                         Jessica A. Masella (*pro hac vice forthcoming*)
                                         Michael G. Lewis (*pro hac vice forthcoming*)
                                         **DLA PIPER LLP (US)**
                                         1251 Avenue of the Americas
                                         New York, NY 10020-1104
                                         Tel: (212) 335-4500
                                         john.hillebrecht@us.dlapiper.com
                                         kevin.walsh@us.dlapiper.com
                                         jessica.masella@us.dlapiper.com
                                         michael.lewis@us.dlapiper.com

                                         *Counsel for Petitioner Qatar Charity*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' *EX PARTE*
APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR
<u>USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

I.  FACTUAL BACKGROUND ......................................................................... 3

  A.  The Parties ........................................................................................ 3

    1.  Qatar National Bank (Q.P.S.C.) ............................................... 3

    2.  Qatar Charity ............................................................................ 4

    3.  Perles Law Firm, P.C. ............................................................. 4

  B.  QNB and QC Were Wrongfully Accused in Federal Court of Supporting the Murder of Steven Sotloff by Terrorists .............................................. 4

  C.  QNB and QC Identified Multiple Indicia of Forgery on the Face of the Purported Transfer Record ................................................................... 5

  D.  The Perles Firm Acknowledged that It Could Not Authenticate the Purported Transfer Record and Agreed to Jointly Move to Dismiss the Sotloff Action with Prejudice and to Vacate the May 30 Opinion and Order ..................................................................................................... 7

  E.  QNB and QC Intend to Initiate Foreign Proceedings ............................. 7

  F.  The Perles Firm Has in Its Possession, Custody, and Control Information Sufficient to Identify the Forgers ........................................................... 9

II. ARGUMENT ............................................................................................... 9

  A.  Legal Framework ............................................................................... 9

  B.  Petitioners Satisfy the Statutory Requirements of 28 U.S.C. § 1782. ......... 11

    1.  Respondent Is "Found" in the District of Columbia. ................. 11

    2.  The Discovery Sought Is for Use in Foreign Proceedings. ......... 12

    3.  Petitioners Are "Interested Persons." ...................................... 13

  C.  All of the Discretionary Factors of Section 1782 Weigh in Favor of Permitting the Discovery Petitioners Seek. ............................................. 14

    1.  The First *Intel* Factor Favors Granting Discovery. .................. 14

    2.  The Second *Intel* Factor Favors Granting Discovery. ............. 15

3.     The Third *Intel* Factor Favors Granting Discovery. ................................. 16

4.     The Fourth *Intel* Factor Favors Granting Discovery................................ 17

III.    CONCLUSION............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Barnwell Enters. Ltd.*,
 265 F. Supp. 3d 1 (D.D.C. 2017) .....................................................................13, 16

*In re de Leon*,
 No. 19-mc-0197, 2020 WL 1047742 (D.D.C. Mar. 4, 2020) .................................12

*In re del Valle Ruiz*,
 939 F.3d 520 (2d Cir. 2019).....................................................................................11

*In re Hornbeam Corp.*,
 722 F. App'x 7 (2d Cir. 2018) .................................................................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004).........................................................................................*passim*

*In re Lane*,
 No. 22 Misc. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022)..................12

*In re Masters*,
 315 F. Supp. 3d 269 (D.D.C. 2018) .........................................................................10

*In re Miya Water Projects Netherlands, B.V.*,
 No. 1:23-mc-43, 2023 WL 6294001 (D.D.C. Sept. 27, 2023).................................10

*In re Pishevar*,
 No. 21-mc-105, 2023 WL 2072454 (D.D.C. Feb. 17, 2023).........................*passim*

*In re Rigby*,
 No. 13-cv-271, 2013 WL 622235 (S.D. Cal. Feb. 19, 2013)...................................16

*Savignac v. Jones Day*,
 586 F. Supp. 3d 16 (D.D.C. 2022) ...........................................................................17

*Sotloff v. Qatar Charity, et al.*,
 No. 22-cv-80726 (S.D. Fla.) (Middlebrooks, J.)............................................*passim*

*In re Veiga*,
 746 F. Supp. 2d 8 (D.D.C. 2010) .............................................................................11

**Statutes**

28 U.S.C. § 1782.................................................................................................*passim*

**Other Authorities**

C. Civ. art. 1240 (Fr.)................................................................................2, 8, 12

C. Civ. art. 441-1 (Fr.) .............................................................................2, 8, 12

Fed. R. Civ. P. 60.............................................................................................7

Fed. R. Civ. P. 45(d) ......................................................................................17

Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity ("QC") (collectively, the "Petitioners"), respectfully submit this Memorandum of Law in support of their *ex parte* Application and Petition (the "Application") pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing them to obtain limited discovery from the Perles Law Firm, P.C. (the "Perles Firm" or "Respondent") pursuant to the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas").

## **PRELIMINARY STATEMENT**

Petitioners QNB and QC are the victims of a fraudulent scheme, pursuant to which a certain individual (or individuals) took advantage of a grieving family and, we are advised, their counsel at the Perles Firm by providing them with a forged bank record (the "Purported Transfer Record" or "Forged Record"), which falsely linked QNB and QC to an alleged wire transfer that supposedly facilitated the heinous murder by terrorists of an American journalist, Steven Sotloff.  Relying on the Forged Record and acting on behalf of Sotloff's relatives, the Perles Firm filed a federal Anti-Terrorism Act lawsuit against QNB and QC in the United States District Court for the Southern District of Florida in the case captioned *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (S.D. Fla.) (Middlebrooks, J.) (the "Sotloff Action").  After receiving a copy of the Purported Transfer Record, QNB and QC provided to the Perles Firm overwhelming evidence that the document was forged.  In response, the Perles Firm, on behalf of the Sotloff Plaintiffs, agreed to file jointly with QNB and QC a motion to dismiss the Sotloff Action with prejudice and to vacate the court's previous order denying QNB's and QC's respective motions to dismiss for failure to state a claim and lack of personal jurisdiction (which order had relied in large part on the Forged Record).  *See* Ex. 9.  On September 29, 2023, the Honorable Donald M. Middlebrooks granted the parties' joint motion and entered an order vacating his own earlier opinion and dismissing the Sotloff action with prejudice.  *See* Ex. 10.

Now, in anticipation of filing civil and/or criminal claims in a foreign tribunal against those who perpetrated this fraud, which has caused QNB and QC to incur significant legal fees and wrongfully tarnished QNB's and QC's images and reputations, QNB and QC bring this Application to take certain limited discovery of the Perles Firm regarding the identity of the individual or individuals who provided the Forged Record to the Perles Firm, reportedly inducing them to rely on it to bring spurious claims against QNB and QC in federal court. QNB and QC have already taken a number of affirmative steps to prepare for such litigation abroad, which they plan to initiate once they have ascertained the source of the Purported Transfer Record via Section 1782 discovery. QNB and QC's present understanding, based on previous communications with the Perles Firm, is that such litigation will be filed in the French courts, although Section 1782 discovery may further inform that understanding. As explained further in the attached Declaration of French counsel, Mr. Stéphane de Navacelle, QNB has already engaged the Navacelle firm in France to assist in assessing and bringing, without limitation, a tort claim based on wrongdoing (in French, "*faute*") under Article 1240 of the French Civil Code and the criminal claim of forgery and use of forgery (in French, "*faux et usage de faux*") under Article 441-1 of the French Criminal Code.

As discussed in greater detail in this Application, QNB and QC satisfy the three statutory requirements of Section 1782. First, the Perles Firm is "found" within the District of Columbia. Second, the requested discovery is sought for use in contemplated foreign proceedings. And third, QNB and QC, as the prospective complainants in the contemplated foreign proceedings, are "interested persons" within the meaning of Section 1782.

Moreover, all four of the discretionary factors set forth in the Supreme Court's *Intel* decision weigh in QNB and QC's favor. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542

U.S. 241, 264-65 (2004).  First, the Perles Firm will not be a party to the foreign proceedings. Second, there is no reason to believe that a foreign court will not be receptive to the evidence obtained via Section 1782 discovery; France—which Petitioners believe to be the likely jurisdiction—and its courts are receptive to the introduction of evidence obtained pursuant to Section 1782.  Third, there is no indication that QNB and QC are attempting to circumvent any foreign proof-gathering restrictions or other policies.  And fourth, the discovery requests that QNB and QC advance here are narrowly tailored—focusing precisely on the source of the Forged Record—such that the requests are neither unduly intrusive nor burdensome.

Because QNB and QC satisfy all three statutory factors and because the four discretionary factors all weigh in QNB and QC's favor, QNB and QC respectfully request that this Court grant their Section 1782 petition.

I.   **FACTUAL BACKGROUND**

   A.   **The Parties**

   1.   Qatar National Bank (Q.P.S.C.)

Founded in 1964, QNB is a commercial bank incorporated in Qatar and headquartered in Qatar's capital city, Doha.  *See* Declaration of Douglas Hallward-Driemeier ¶ 5. Today, it is the biggest bank in Qatar and one of the largest financial institutions in the Middle East and North Africa (MENA) region.  *Id*.  QNB has over 30,000 employees across 900 locations.  *Id*.  Over the last several decades, QNB has consistently been recognized by numerous renowned financial publications for its high-quality services and regional stature.  *Id*.

### 2.    Qatar Charity

QC is a charitable organization headquartered in Doha.  *See* Declaration of Kevin Walsh ¶ 5.  QC operates in over 70 countries, where it provides charitable relief to millions of deserving recipients.  *Id.* ¶ 6.  To carry out its charitable mission, QC regularly partners with governments, including the United States; global organizations, including the United Nations; and international non-profits, including the Bill & Melinda Gates Foundation.  *Id.*  ¶ 7.  In recognition of its charitable work, QC has been praised by its partners, including senior U.S. diplomats who have regularly noted QC's positive impact around the world, characterizing QC as "one of the best organizations in the world." *Id.* ¶ 8.

### 3.    Perles Law Firm, P.C.

The Perles Firm is a Washington, D.C.-based boutique law firm that specializes in civil anti-terrorism ligation, filing actions on behalf of terror victims and their families against alleged state sponsors of terrorism and entities that allegedly facilitate and support terrorism.  *See* Hallward-Driemeier Decl. ¶ 6.

### B.    QNB and QC Were Wrongfully Accused in Federal Court of Supporting the Murder of Steven Sotloff by Terrorists

On May 13, 2022, the estate and family members of deceased American journalist Steven Sotloff ("Plaintiffs"), represented by the Perles Firm, filed a complaint asserting claims under the federal Anti-Terrorism Act in the United States District Court for the Southern District of Florida against QNB and QC in the case captioned *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (DMM) (S.D. Fla.) ("Complaint").  *Id.* ¶ 3; Ex. 3.  Plaintiffs claimed that QNB and QC facilitated a $800,000 wire transfer to an individual who later joined ISIS and ordered the execution of American journalist, Steven Sotloff.  *See* Hallward-Driemeier Decl. ¶ 4; Ex. 3.

The *sine qua non* of Plaintiffs' allegations was the alleged $800,000 wire transfer, which the Perles Firm claimed was proven by a single, one-page "wire-confirmation printout" allegedly created by a bank in Istanbul, Turkey—Ziraat Bank—and written in Turkish.  This printout purportedly reflected the alleged $800,000 wire transfer being made on October 16, 2013, sent by an individual named "Jassem Abdullah" (allegedly acting for QC) from an account at QNB to an account at Ziraat Bank in Turkey in the name of "Fadhel al Salim."  *See* Hallward-Driemeier Decl. ¶ 11; Ex. 3 ¶¶ 3, 36, 101-109, 226.  The Complaint alleged that al Salim picked up these funds from a branch of Ziraat Bank in Istanbul, signing his name and writing other information on the printout as proof of his receipt of the funds.  *See* Hallward-Driemeier Decl. ¶ 12; Ex. 3 ¶¶ 106-109.  This Purported Transfer Record was referenced repeatedly in the Complaint.  *See* Ex. 3 ¶¶ 3, 36, 101-109, 226.  After crossing the border into Syria, al Salim allegedly proceeded to use these funds to raise a brigade of terrorist fighters in Syria and, less than a year after the alleged wire transfer, allegedly ordered the execution of Steven Sotloff.  *See* Hallward-Driemeier Decl. ¶ 13; Ex. 3 ¶¶ 3, 112.

On May 30, 2023, invoking and relying upon this Purported Transfer Record—the only alleged documentary "evidence" supporting Plaintiffs' claims, and thus the critical linchpin of Plaintiffs' allegations as against QNB and QC—Judge Middlebrooks denied QNB's and QC's motions to dismiss Plaintiffs' complaint for failure to state a claim and lack of personal jurisdiction (the "May 30 Opinion and Order").  *See* Hallward-Driemeier Decl. ¶ 10; Ex. 6.

### C.    QNB and QC Identified Multiple Indicia of Forgery on the Face of the Purported Transfer Record

Following entry of Judge Middlebrooks' May 30 Opinion and Order, QNB and QC asked the court to order production of the Purported Transfer Record, which the Perles Firm had yet to produce.  *See* Hallward-Driemeier Decl. ¶ 14.  QNB and QC explained that, despite diligent and

comprehensive searches of their own databases and records, QNB and QC had been unable to find any record of the alleged wire transfer.  *Id.* ¶ 15.

On June 8, 2023, the court ordered Plaintiffs to produce the Purported Transfer Record within three days of entry of a confidentiality order, and Plaintiffs ultimately did so on June 26, 2023.[1]  *Id.* ¶ 8; Ex. 7. Following receipt of the document, Petitioners identified various indicia of forgery on the face of the document, including numerous misspellings of key banking terms, blanks where required information should have been included, and reference to a SWIFT Business Identifier Code ("BIC")[2] for QNB that did not even exist in 2013 when the alleged transfer occurred and that SWIFT did not assign to QNB until October 25, 2017—more than four years after the alleged wire transfer by QNB and QC to al Salim.  *See* Hallward-Driemeier Decl. ¶ 17. Moreover, QNB contacted Ziraat Bank, which supposedly received the wire reflected in the Purported Transfer Record, and Ziraat Bank confirmed to QNB that it likewise was unable to identify any record of the alleged transfer.  *Id.* ¶ 18.

On August 17, 2023, counsel for both QNB and QC promptly brought these and other indicia of forgery to the attention of the Perles Firm (the "August 17 Letter").  *Id.* ¶ 19.

---

[1] Plaintiffs initially designated the entirety of the Purported Transfer Record "Attorneys' Eyes Only," thereby preventing QNB and QC's counsel from sharing the document with their clients.  After QNB and QC's counsel demanded that they be able to provide at least portions of the Purported Transfer Record to their clients to allow for verification of some of the information contained therein, the Perles Firm produced the attached redacted version (Exhibit 8), which they designated "Confidential." Plaintiffs have since agreed to remove the "Confidential" designation of this version of the document.  *See* Hallward-Driemeier Decl. ¶ 17 n.2.

[2] SWIFT, which is the acronym for the Society for Worldwide Interbank Financial Telecommunication, is a network that banks use for execution of financial transactions and transfer of funds between accounts worldwide. To avoid confusion in the sending and receipt of interbank wire transfers worldwide, SWIFT assigns unique BICs to each bank that participates in its network.  *See* Hallward-Driemeier Decl. ¶ 17 n.1.

**D.    The Perles Firm Acknowledged that It Could Not Authenticate the Purported Transfer Record and Agreed to Jointly Move to Dismiss the Sotloff Action with Prejudice and to Vacate the May 30 Opinion and Order**

Following the August 17 Letter, the Perles Firm reportedly conducted its own investigation into the authenticity of the Purported Transfer Record.  *See* Hallward-Driemeier Decl. ¶ 20. Approximately one month later, the Perles Firm acknowledged that, despite speaking with at least one individual located in Paris, France, who allegedly witnessed the transaction and who continued to maintain that the Purported Transfer Record was genuine (the "Anonymous Source"), the Perles Firm could not explain the indica of forgery nor independently verify the legitimacy of the Purported Transfer Record.  *Id*. ¶¶ 21-23.  Given that Plaintiffs' claims and their invocation of the court's personal jurisdiction both concededly hinged on their ability to authenticate the Purported Transfer Record as proof that the alleged $800,000 wire occurred—something which the Perles Firm could not do—Plaintiffs agreed to file a joint motion with QNB and QC to dismiss the Sotloff Action with prejudice and to vacate Judge Middlebrooks' May 30 2023 Opinion and Order pursuant to Federal Rule of Civil Procedure 60, which motion was filed on September 22, 2023. *Id*. ¶ 24; Ex. 9.

A week later, on September 29, 2023, Judge Middlebrooks found "good cause to grant" the parties' joint motion.  *See* Hallward-Driemeier Decl. ¶ 25; Ex. 10.  Accordingly, Judge Middlebrooks ordered and adjudged that the Sotloff Action be dismissed with prejudice and that the May 30 Opinion and Order be vacated.  *See id*.

**E.    QNB and QC Intend to Initiate Foreign Proceedings**

The Purported Transfer Record has caused, and continues to cause, significant reputational harm to QNB and QC.  This document served as the basis for the publicly filed Sotloff Action, a lawsuit that caused QNB and QC to incur significant legal expenses and erroneously portrayed QNB and QC as supporting a notorious terrorist group responsible for the gruesome death of an

American citizen.  *Id.* ¶¶ 26-27. QNB's and QC's injuries have been further exacerbated by the international media's widespread reporting of this litigation and the baseless claims against QNB and QC, which continues notwithstanding the subsequent dismissal with prejudice.  *See, e.g. See* Hallward-Driemeier Decl. ¶¶ 29-31; Exs. 11 & 12. As a result, QNB and QC intend to initiate civil and/or criminal suits in the most appropriate foreign jurisdiction against the Anonymous Source, as well as any other individual(s) who have participated in forging and/or disseminating the Purported Transfer Record (together with the Anonymous Source, the "Forgers").  Given that this individual or individuals are not yet known to Petitioners, we cannot yet say with confidence where those persons reside.  But Petitioners at this time have reason to believe that at least one of those individuals is located in France.  *See* Hallward-Driemeier Decl. ¶ 32.  This belief is based upon statements by the Perles Firm to counsel for QNB and QC about visiting fact witnesses to the Sotloff Action in Paris, France, in or around August 2023.  In particular, the Perles Firm reported to counsel for QNB and QC that at least one of these individuals in Paris claimed to have witnessed the non-existent $800,000 transaction and supposedly maintained at that time that the Purported Transfer Record was authentic.  *Id.* ¶¶ 21-22.

    To the extent France is determined through the limited discovery sought here to be the appropriate jurisdiction, QNB and QC plan on bringing, at a minimum, a tort claim based on wrongdoing (*faute*) under Article 1240 of the French Civil Code against the Forgers and/or a criminal claim of forgery and use of forgery (*faux et usage de faux*) under Article 441-1 of the French Criminal Code.  *Id.* ¶ 34; Declaration of Stéphane de Navacelle ¶¶ 25-27.  In the event that the discovery obtained from the Application indicates that a different foreign jurisdiction is more appropriate, QNB and QC will obtain local counsel there and pursue similar claims.  *See* Hallward-Driemeier Decl. ¶ 36.

**F.     The Perles Firm Has in Its Possession, Custody, and Control Information Sufficient to Identify the Forgers**

The Perles Firm has expressly acknowledged that it knows the identity of the Anonymous Source—an individual the Perles Firm has described to QNB's and QC's counsel as someone (i) with whom they have spoken; (ii) who has claimed to the Perles Firm that he witnessed the alleged $800,000 transaction; and (iii) who has claimed to the Perles Firm that the Purported Transfer Record is genuine.  *See* Hallward-Driemeier Decl. ¶¶ 21-22. In other words, the Perles Firm has in its possession, custody, and control information that will enable QNB and QC to identify the Anonymous Source who provided Plaintiffs with false information about QNB and QC, including information about the Purported Transfer Record, as well as potentially other Forgers, all of which is critical to initiating the judicial proceedings in a foreign tribunal.  *Id.* ¶ 38.

Without such information, which QNB and QC are unable otherwise to obtain, there will be no way for QNB and QC to seek legal redress against the individuals who, by their fraudulent scheme, caused QNB and QC to incur significant legal fees in defending the frivolous Sotloff Action and wrongly and tortiously tarnished QNB's and QC's respective images and reputations. *See* Hallward-Driemeier Decl. ¶ 39.

## II.     ARGUMENT

### A.     Legal Framework

28 U.S.C. § 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

District courts are "generally authorized" to review a Section 1782 application on an *ex parte* basis. *In re Masters*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." (quoting *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012))). "As a general matter, *ex parte* review is 'justified by the fact that the parties [from whom discovery is sought] will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *See In re Miya Water Projects Netherlands, B.V.*, No. 1:23-mc-43, 2023 WL 6294001, at *6 (D.D.C. Sept. 27, 2023) (quoting *In re de Leon*, No. 19-mc-0197, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020)). Federal courts employ a two-stage inquiry to determine whether to grant a motion under Section 1782. *See id.*

"First, the court must determine whether it *can* order the requested relief—that is, whether it has the authority to do so." *Id.* That authority "turns on three statutory criteria: (1) the person from whom discovery is sought must 'reside in or be found within' the district; (2) the discovery must be 'for use in' a 'proceeding' before a foreign or international tribunal; and (3) the application must be 'made by a foreign or international tribunal or any interested person.'" *In re Pishevar*, No. 21-mc-105, 2023 WL 2072454, at *2 (D.D.C. Feb. 17, 2023) (quoting *In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018)).

"Second, [the court] must decide whether it *should* order the requested relief—that is, whether to exercise its discretion to do so[.]" *Miya*, 2023 WL 6294001, at *6. In *Intel*, the Supreme Court articulated four factors that "bear consideration" in ruling on a Section 1782 request:

> 1) "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent";

2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

3) "Whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

4) Whether the request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65.

These discretionary factors are considered in light of the "statute's twin aims: *i.e.*, to provide fair and efficient assistance to participants in international litigation and to encourage other countries to provide similar assistance." *In re Veiga*, 746 F. Supp. 2d 8, 17, 24 (D.D.C. 2010) (also noting the "statute's overarching interest in providing fair and efficient assistance and the *liberal standards of discovery* in granting the application" (emphasis added)). Notably, "the statute has, over the years, been given increasingly broad applicability." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).

**B.     Petitioners Satisfy the Statutory Requirements of 28 U.S.C. § 1782.**

Petitioners here satisfy the three statutory requirements of Section 1782.  First, the Perles Firm is "found" within the District of Columbia.  Second, the requested discovery is sought for use in foreign proceedings that QNB and QC are preparing to initiate.  And third, Petitioners, as the putative plaintiffs and complainants in the impending foreign proceedings, are "interested person[s]" under the requirements of Section 1782.  *See Pishevar*, 2023 WL 2072454, at *3.

**1.     Respondent Is "Found" in the District of Columbia.**

First, the Perles Firm is a law firm that is found in the District of Columbia, because its headquarters are located in the District of Columbia at 816 Connecticut Avenue Northwest, 12th

Floor, Washington, D.C. 20006, as reflected online and in the Perles Firm's filings in the Sotloff Action.  *See* Hallward-Driemeier Decl.  ¶ 6; *see also Contact Us*, Perles Law, www.perleslaw.com/contact-us.  *See de Leon*, 2020 WL 1047742, at *2 (holding that a company "'resides' in this district" because its "headquarters are located . . . [in] Washington, D.C."); *In re Lane*, No. 22 Misc. 34 (LGS), 2022 WL 16737132, at *3 (S.D.N.Y. Nov. 7, 2022) (holding that a law firm resides in the Southern District of New York because it is "headquartered in . . . Manhattan").  Accordingly, the first statutory requirement is clearly met here.

### 2.     The Discovery Sought Is for Use in Foreign Proceedings.

Second, "Section 1782 does not require foreign proceedings to be 'pending' or 'imminent,' so courts may authorize discovery 'provided that the foreign proceedings are within reasonable contemplation when the request for judicial assistance is filed.'" *Pishevar*, 2023 WL 2072454, at *2 (quoting *DiGiulian*, 314 F. Supp. 3d at 6).

Here, QNB, QC, and their counsel have taken concrete steps to prepare for legal action in a foreign court once they are able to ascertain from the Perles Firm—via this Application—the identity of the Forgers, whose misconduct led to the creation and/or dissemination of the Purported Transfer Record.  *See* Hallward-Driemeier Decl. ¶¶ 32-33.  QNB has engaged local counsel in France, who has already conducted detailed analyses of various potential causes of actions, including wrongdoing (*faute*) under Article 1240 of the French Civil Code and forgery and use of forgery (*faux et usage de faux*) under Article 441-1 of the French Criminal Code.  *See id.* ¶ 34; Navacelle Declaration ¶¶ 25-27; *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (summary order) (holding that a foreign proceeding was "reasonably contemplated" where the petitioner "represented that it intended to initiate further litigation" and "articulated a theory on which it intended to litigate").

12

While it is QNB and QC's initial understanding that at least the Anonymous Source, and perhaps all of the Forgers, reside in France, QNB and QC cannot bring such suit until they ascertain further geographical details and other identifying information regarding the Forgers. The narrow information that QNB and QC seek regarding the Purported Transfer Record, as in *Pishevar*, would be "'for use' in these contemplated proceedings because the identity of the . . . [s]ource is instrumental to pursuing [QNB and QC's] claims," *Pishevar*, 2023 WL 2072454, at *2, as are the specific details surrounding the forgery of the Purported Transfer Record. Not only is such legal action within the reasonable contemplation of QNB and QC at this time, which is all that is required, but said action is even imminent upon receipt of the narrow information that QNB and QC seek in this petition.

Moreover, QNB and QC are not required to show that the information sought under this petition would be discoverable or admissible in a foreign proceeding. *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[S]ection 1782 does not require that the material sought in the United States be discoverable—or even admissible—in the foreign tribunals."). Accordingly, QNB and QC satisfy the second statutory requirement under Section 1782.

### 3.     Petitioners Are "Interested Persons."

Third, Petitioners are clearly "interested persons" within the meaning of Section 1782. "An individual who 'intends to initiate proceedings' in a foreign tribunal satisfies this third statutory requirement." *Pishevar*, 2023 WL 2072454, at *3 (quoting *Att'y Gen. of Brit. Virgin Islands v. Hyman*, No. 19-mc-164, 2020 WL 2615519, at *6 (D.D.C. May 23, 2020)). The same is true of a "'complainant' in a potential criminal matter who has 'a right to submit information and who

possesses a reasonable interest in obtaining judicial assistance.'"  *Id.* (quoting *Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.*, 760 F. Supp. 2d 109, 113 (D.D.C. 2011), *aff'd*, 473 F. App'x 2 (D.C. Cir. 2012)).  Because QNB and QC intend to both initiate foreign proceedings and act as complainants in a potential criminal matter, *see* Hallward-Driemeier Decl. ¶ 32, QNB and QC satisfy this third statutory requirement under Section 1782.

### C.   All of the Discretionary Factors of Section 1782 Weigh in Favor of Permitting the Discovery Petitioners Seek.

After the three statutory requirements are met, courts may consider the four discretionary *Intel* factors.  Here, each of those four factors weighs in favor of granting the requested discovery for Petitioners.

First, the Perles Firm will not be a party to the foreign proceedings.  Second, there is no affirmative reason to believe that a foreign court would not be receptive to the limited information obtained via Section 1782 discovery here. France—which is what Petitioners believe to be the likely jurisdiction—and its courts are receptive to the introduction of evidence obtained pursuant to Section 1782.  Third, there is no indication that QNB and QC are attempting to circumvent any foreign proof-gathering restrictions or other policies.  And fourth, the discovery requests that QNB and QC advance here are narrowly tailored—focusing on the circumstances of the forged bank transfer record—such that they are neither unduly intrusive nor burdensome.

#### 1.   The First *Intel* Factor Favors Granting Discovery.

First, the Supreme Court in *Intel* noted that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  The rationale behind this factor, the Supreme Court explained, is that a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to

produce evidence." *Intel*, 542 U.S at 264.   Aid under Section 1782 would therefore be unnecessary, which is why the Supreme Court explained that the need for such aid would not be as apparent.

Here, that factor weighs squarely toward granting discovery.  The Perles Firm would not be a participant in a foreign proceeding, because the Perles Firm (as far as QNB and QC understand from the Perles Firm's representations) was merely a recipient of the forged Purported Transfer Record.  The actual participants in a foreign proceeding would be QNB, QC, the Anonymous Source, and other Forgers, and perhaps others—but not the Perles Firm.  Moreover, there is presently no other avenue, except through the Perles Firm, for Petitioners to uncover the identities of the Anonymous Source or other Forgers.

### 2.      The Second *Intel* Factor Favors Granting Discovery.

The second *Intel* factor that "bear[s] consideration" looks at "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  While QNB and QC do not know in which specific foreign jurisdiction they will bring their claims before seeing the discovery resulting from this Application, there is no affirmative reason to believe that a foreign court would not be receptive to the limited information obtained via Section 1782 discovery that identifies Anonymous Sources and/or the Forgers.

Relevant here is the prevailing presumption of receptivity. "Courts in the United States . . . presume that foreign tribunals will be receptive to evidence obtained here, and ordinarily consider 'only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.'"  *Pishevar*, 2023 WL 2072454, at *3 (quoting *DiGiulian*, 314 F. Supp. 3d at 8).  Given that QNB and QC are relying on the requested discovery to *ascertain* the appropriate foreign jurisdiction, there can be no authoritative proof here that a foreign tribunal would reject evidence

obtained via Section 1782.  Moreover, the most likely jurisdiction in QNB and QC's view, France, would almost certainly be receptive to such assistance.  *See* Hallward-Driemeier Decl. ¶¶ 40-41. Indeed, in *In re Rigby*, a federal court concluded that "French courts would be receptive to the introduction of evidence obtained pursuant to § 1782."  No. 13-cv-271, 2013 WL 622235, at *2-3 (S.D. Cal. Feb. 19, 2013) (separately noting that, if "applying the *Intel* factors does not clearly suggest how the Court should exercise its discretion . . . our courts generally favor discovery, [and] the Court will authorize the issuance of the requested . . . subpoena.").

### 3.    The Third *Intel* Factor Favors Granting Discovery.

Third, QNB and QC's petition does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  As in *Pishevar*, this factor weighs in QNB and QC's favor because "[n]othing in the record indicates that [QNB and QC are] seeking discovery here via Section 1782 to circumvent the proof-gathering rules or policies of either this Court or the [foreign] courts."  *Pishevar*, 2023 WL 2072454, at *4 (citing *DiGiulian*, 314 F. Supp. 3d at 9 and *Veiga*, 746 F. Supp. 2d at 25).  It is especially true here that there is no attempt at circumvention given that QNB and QC do not yet fully know in which foreign jurisdiction they will bring their claims.  For France, QNB and QC see no indication that their requested discovery would evade any restrictions by French courts.  *See* Hallward-Driemeier Decl. ¶ 41.

And as noted earlier, "section 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings."  *Barnwell Enterprises*, 265 F. Supp. 3d at 12; *see also Intel*, 542 U.S. at 247 ("§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding.").

### 4. The Fourth *Intel* Factor Favors Granting Discovery.

Finally, the fourth *Intel* factor examines whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.

Here, QNB and QC seek narrow and targeted information regarding the Purported Transfer Record, which was at the heart of the now-dismissed Sotloff Action and which has been discredited. Such information is not only relevant to QNB and QC's claims against the Anonymous Source and other Forgers, but *central* to bringing such claims. *See Pishevar*, 2023 WL 2072454, at *4 (noting that for the fourth *Intel* factor, the "standard in this context is substantially the same as under the Federal Rules of Civil Procedure," including "relevance considerations" and "the effect of temporal and subject-matter restrictions"). This is not the kind of sprawling discovery unbounded by time and subject matter that would raise concerns under this fourth factor. QNB and QC are focused on the Purported Transfer Record and its circumstances.[3] In any event, as the court in *Pishevar* noted, the Perles Firm would have "an opportunity to object to the subpoena on burdensomeness and related grounds under Rule 45(d)." *Id.*

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Petitioners respectfully request that the Court (a) grant the *ex parte* Application and Petition for an Order to Conduct Discovery; (b) enter the Proposed Order

---

[3] For the avoidance of doubt, the information sought by QNB and QC is not subject to the attorney work-product doctrine. The identities of individuals with knowledge relevant to a party's claims are discoverable and are not otherwise protected from disclosure under the attorney work-product doctrine because such information does not reveal the mental impressions or litigation strategy of counsel. *See Savignac v. Jones Day*, 586 F. Supp. 3d 16, 21 (D.D.C. 2022) (requesting the names of individuals "not as a method to glean Plaintiffs' litigation strategy, but rather as an effort to identify witnesses who might have factual information relevant to an important issue in the case" is "information [that] is both relevant and not subject to the work-product privilege"). Here, QNB and QC are trying to obtain the identities of the Anonymous Source and the Forgers solely to initiate judicial proceedings in a foreign tribunal without regard for the past, present, or future litigation strategies of the Perles Firm. Therefore, the information requested in the Subpoenas is relevant and discoverable.

attached to the Declaration of Douglas Hallward-Driemeier as Exhibit 1, (c) authorize

Petitioners, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas; and (d) grant any and all other

relief to Petitioners as the Court deems just and proper.

Dated: March 12, 2024                    Respectfully submitted,

                                         /s/ Douglas Hallward-Driemeier
                                         Douglas Hallward-Driemeier (D.C. Bar No. 994052)
                                         **ROPES & GRAY LLP**
                                         2099 Pennsylvania Avenue, N.W.
                                         Washington, DC 20006-6807
                                         Tel: (202) 508-4776
                                         douglas.hallward-driemeier@ropesgray.com


                                         Michael G. McGovern (*pro hac vice forthcoming*)
                                         **ROPES & GRAY LLP**
                                         1211 Avenue of the Americas
                                         New York, NY  10036-8704
                                         Tel: (212) 596-9000
                                         michael.mcgovern@ropesgray.com

                                         *Counsel for Petitioner Qatar National Bank
                                         (Q.P.S.C.)*


                                         John M. Hillebrecht (*pro hac vice forthcoming*)
                                         Kevin Walsh (*pro hac vice forthcoming*)
                                         Jessica A. Masella (*pro hac vice forthcoming*)
                                         Michael G. Lewis (*pro hac vice forthcoming*)
                                         **DLA PIPER LLP (US)**
                                         1251 Avenue of the Americas
                                         New York, NY 10020-1104
                                         Tel: (212) 335-4500
                                         john.hillebrecht@us.dlapiper.com
                                         kevin.walsh@us.dlapiper.com
                                         jessica.masella@us.dlapiper.com
                                         michael.lewis@us.dlapiper.com

                                         *Counsel for Petitioner Qatar Charity*