**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

IN RE APPLICATION OF QATAR
NATIONAL BANK (Q.P.S.C.) AND
QATAR CHARITY FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1782

Case No. _____

**DECLARATION OF DOUGLAS HALLWARD-DRIEMEIER, ESQ.**

I, Douglas Hallward-Driemeier, pursuant to 28 U.S.C. § 1746, hereby declare under

penalty of perjury, that the following is true and correct:

1.      I am a Partner at the law firm Ropes & Gray LLP.

2.      I am admitted to practice law in, among other places, the District of Columbia and

the United States District Court for the District of Columbia, and am a member in good standing

of these Bars.

3.      I submit this Declaration in support of Qatar National Bank (Q.P.S.C.)  ("QNB")

and Qatar Charity ("QC") (collectively, the "Petitioners")'s *Ex Parte* Application and Petition For

An Order to Conduct Discovery For Use In Foreign Proceedings Pursuant To 28 U.S.C. § 1782

(the "Application") (a true and correct copy of Petitioners' proposed order is attached hereto as

**Exhibit 1**).

4.      Unless otherwise indicated, all facts set forth in this declaration are based upon: (a)

my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas

(a true and correct copy of which is attached hereto as **Exhibit 2**); and (c) information provided to

me by the Petitioners or professionals retained by Petitioners.

-2-

**THE PARTIES**

5.    *QNB*

    a.    QNB, a commercial bank founded in 1964, is incorporated in Qatar and headquartered in Qatar's capital city, Doha.

    b.    Today, QNB is the biggest bank in Qatar and one of the largest financial institutions in the Middle East and Africa (MEF) region.

    c.    QNB boasts 30,000 employees across 900 locations.

    d.    Over the last several decades, QNB has consistently been recognized by numerous renowned financial publications for its high-quality services and regional stature.

6.    *The Perles Firm*

    a.    Perles Law Firm, P.C. ("Respondent" or the "Perles Firm") is a Washington, D.C.-based boutique law firm located, according to its website, at 816 Connecticut Avenue Northwest, 12th floor, Washington, D.C. 20006.  *See Contact Us*, Perles Law, www.perleslaw.com/contact-us.

    b.    According to its website, the Perles Firm specializes in civil anti-terrorism ligation, filing actions on behalf of terror victims and their families against alleged state sponsors of terrorism and entities that allegedly facilitate and support terrorism.  *See About Us,* Perles Law, www.perleslaw.com.

**THE SOTLOFF ACTION**

7.    On May 13, 2022, the estate and family members of deceased American journalist Steven Sotloff ("Plaintiffs"), represented by the Perles Firm, asserted claims under the federal Anti-Terrorism Act in the United States District Court for the Southern District of Florida against QNB and QC, in the case captioned *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (DMM) (S.D.

-2-

Fla.) ("Sotloff Action").  A true and correct copy of the Sotloff Action complaint ("Complaint")

is attached hereto as **Exhibit 3**.

8.      Plaintiffs claimed that QNB and QC facilitated a purported $800,000 wire transfer

to an individual who later joined ISIS and ordered the execution of Sotloff.

9.      On December 9, 2022, QNB and QC filed motions to dismiss the Complaint in the

Sotloff Action with prejudice for failure to state a claim and lack of personal jurisdiction. A true

and correct copy of QNB's amended motion to dismiss and QC's motion to dismiss are attached

hereto as **Exhibit 4** and **Exhibit 5**, respectively.

10.      On May 30, 2023, the district court denied QNB's and QC's motions to dismiss the

Sotloff Action (the "May 30 Opinion and Order)." A true and correct copy of the May 30 Opinion

and Order is attached hereto as **Exhibit 6**.

## THE PURPORTED TRANSFER RECORD

11.      The *sine qua non* of the Sotloff Action was a single "wire confirmation printout"

allegedly created by a bank in Istanbul, Turkey— Ziraat Bank— and written in Turkish (the

"Purported Transfer Record" or "Forged Record"). This printout purportedly reflected the alleged

$800,000 wire transfer being made on October 16, 2013, sent by an individual named "Jassem

Abdullah" (allegedly acting for QC) from an account at QNB to an account at Ziraat Bank in

Turkey in the name of "Fadhel al Salim."  *See* **Exhibit 3** ¶¶ 3, 36, 101-109, 226.

12.      According to the Complaint, al Salim picked up these funds from a branch of Ziraat

Bank in Istanbul, Turkey, signing his name and writing other information on the Purported

Transfer Record as proof of his receipt of the funds.  *See id.* ¶¶ 106-109.

13.      After crossing the border into Syria, al Salim allegedly proceeded to use these funds

to raise a brigade of terrorist fighters in Syria and, less than a year after the alleged wire transfer,

allegedly ordered the execution of Sotloff.  *See id.* ¶¶ 3, 112.

## QNB AND QC IDENTIFY INDICIA OF FORGERY

14.     Following the May 30 Opinion and Order of the United States Court for the Southern District of Florida, QNB and QC asked the court to order the production of the Purported Transfer Record given it was the critical linchpin of Plaintiffs' claims and at that point had not yet been produced.

15.     QNB and QC explained that, despite diligent and comprehensive searches of its own databases, they had been unable to find any record of the alleged wire transfer.

16.     On June 8, 2023, Magistrate Judge Matthewman ordered Plaintiffs to produce the Purported Transfer Record within three days of entry of a confidentiality order, and Plaintiffs ultimately did so on June 26, 2023. A true and correct copy of the docket reflecting Magistrate Judge Matthewman's paperless order is attached hereto as **Exhibit 7**.

17.     Following receipt of the Purported Transfer Record, QNB, QC, and their counsel quickly identified indicia of forgery on the face of the document, including numerous misspellings of key banking terms, blanks where required information should have been included, and reference to a SWIFT Business Identifier Code ("BIC")[1] for QNB that did not exist in 2013 when the alleged transfer occurred and that SWIFT did not assign to QNB until October 25, 2017—more than four years after the alleged wire transfer by QNB and QC to al Salim. A true and correct copy of the Purported Transfer Record is attached hereto as **Exhibit 8**.[2]

---

[1] SWIFT, which is the acronym for the Society for Worldwide Interbank Financial Telecommunication, is a network that banks use for execution of financial transactions and transfer of funds between accounts worldwide. To avoid confusion in the sending and receipt of interbank wire transfers worldwide, SWIFT assigns unique BICs to each bank that participates in its network.

[2] Plaintiffs initially designated the entirety of the Purported Transfer Record "Attorneys' Eyes Only," thereby preventing QNB's and QC's counsel from sharing the document with their clients. After QNB's and QC's counsel demanded that they be able to provide at least portions of the Purported Transfer Record to their clients to allow for verification of some of the information contained in the Purported Transfer Record, the Perles Firm produced the attached redacted version (**Exhibit 8**), which they designated "Confidential." Plaintiffs have since agreed to remove the "Confidential" designation of the document.

18.     Moreover, QNB contacted Ziraat Bank, which supposedly received the wire reflected in the Purported Transfer Record, and Ziraat Bank confirmed that it likewise was unable to identify any record of the alleged transfer.

19.     On August 17, 2023, QNB's and QC's counsel promptly brought these and other indicia of forgery to the attention of the Perles Firm (the "August 17 Letter").

## THE JOINT MOTION TO DISMISS THE SOTLOFF ACTION WITH PREJUDICE AND VACATE THE COURT'S MAY 30 OPINION AND ORDER

20.     Following the August 17 Letter, the Perles Firm reportedly conducted its own investigation into the authenticity of the Purported Transfer Record.

21.     During this reported investigation, the Perles Firm informed QNB's and QC's counsel that it had met with fact witnesses to the Sotloff Action in Paris, France.

22.     During this reported investigation, the Perles Firm also informed QNB's and QC's counsel that it had been in contact with at least one individual in Paris, France in or about August 2023 who allegedly witnessed the non-existent $800,000 transaction, and who claimed that the Purported Transfer Record was genuine (the "Anonymous Source").[3]

23.     Despite the Perles Firm's reported investigation, it acknowledged that it was unable to authenticate the Purported Transfer Record.

24.     Given that Plaintiffs' claims and their invocation of the court's personal jurisdiction both hinged on their ability to authenticate the Purported Transfer Record as proof that the alleged $800,000 wire occurred—something which the Perles Firm could not do—Plaintiffs agreed to file a joint motion with QNB and QC on September 22, 2023 to dismiss the Sotloff Action with prejudice and to vacate the court's May 30 2023 Opinion and Order pursuant to Federal Rule of

---

[3] Plaintiffs' Federal Rule of Civil Procedure 26 Disclosure also provided that an individual identified as "Witness 1" would "likely [ ] have discoverable information regarding the allegations set forth in paragraphs" of the Sotloff Action complaint related to, among other things, the Purported Transfer Record.

Civil Procedure 60.  A true and correct copy of the September 22, 2023 joint motion is attached hereto as **Exhibit 9.**

25.    On September 29, 2023, the court found "good cause to grant" the parties' joint motion.  Accordingly, the court ordered and adjudged that the Sotloff Action be dismissed with prejudice and that the May 30 Opinion and Order be vacated.  A true and correct copy of the September 29, 2023 order is attached hereto as **Exhibit 10**.

## THE CONTEMPLATED FOREIGN PROCEEDINGS

26.    The Forged Record has caused QNB and QC to incur significant legal fees to defend against the frivolous claims of the Sotloff Action, as well as suffer serious reputational harm.

27.    This document served as the basis for the publicly filed Sotloff Action, a lawsuit that erroneously portrayed QNB and QC as supporting a notorious terrorist group.

28.    QNB's and QC's injury has been further exacerbated by the international media's widespread reporting of this litigation and the baseless claims against QNB and QC.

29.    For example, on May 13, 2022, the Associated Press published an article about the Sotloff Action titled, *Qatar, key US ally, faces new accusations of terror funding*. That article, which expressly referenced QNB and QC, reported, "The family of Steven Sotloff alleged in a federal lawsuit Friday that prominent Qatari institutions wired $800,000 to an Islamic State 'judge' who ordered the murder of Sotloff and another American journalist, James Foley. The two were beheaded in Syria in 2014, their killings filmed and published in grisly propaganda videos."  A true and correct copy of the Associated Press article is attached hereto as **Exhibit 11**.

30.    More recently, on October 11, 2023, several weeks after the Sotloff Action had been dismissed due to concerns about the Purported Transfer Record's authenticity, the Washington Examiner published an opinion article titled, *Israel war: Qatar is vital supporter of*

*Hamas terrorism*, which also expressly mentioned the Sotloff Action.  The Washington Examiner article stated, "The family of Steven Sotloff, an American journalist who was executed by ISIS, alleged in a federal lawsuit in 2022 that Qatar Charity and Qatar National Bank had wired $800,000 to the ISIS official who ordered the beheading of Sotloff and James Foley, another American journalist."  A true and correct copy of the Washington Examiner article is attached hereto as **Exhibit 12**.

31.   **Exhibit 11** and **Exhibit 12** are just several of the many publications describing the Sotloff Action, and erroneously linking QNB and QC to terrorism.

32.   As a result of the circumstances described in the above paragraphs, the Petitioners are currently contemplating and intend to initiate civil and/or criminal proceedings in whatever foreign jurisdiction is most appropriate to pursue claims against the Anonymous Source, as well as any other individual who may have participated in forging and/or the dissemination of the Forged Record (together with the Anonymous Source, the "Forgers").  Based upon communications with and disclosures made by the Perles Firm, QNB and QC reasonably believe France is that foreign jurisdiction.  *See supra,* ¶¶ 20-22.

33.   To that end, QNB has retained the Parisian-based attorney Stéphane de Navacelle, Founder and Managing Partner of the law firm Navacelle, as local French counsel ("Navacelle").

34.   Navacelle, with whom Ropes & Gray has discussed the Sotloff Action and the Forged Record, and to whom Ropes & Gray has provided all relevant materials, has advised that there is a good faith basis to pursue at least the following claims against the Forgers in the courts of France: (i) the civil claim of wrongdoing (in French "*faute*") under Article 1240 of the French Civil Code; and (ii) the criminal claim of forgery and use of forgery (in French "*faux et usage de faux*") under Article 441-1 of the French Criminal Code.

35.      The bases for bringing those claims against the Forgers in connection with their

conduct related to the Forged Record is set forth in the Declaration of Stéphane de Navacelle, Esq.,

dated March 12, 2024, also made in support of the 1782 Application.

36.      To the extent that discovery obtained from the Application indicates that a different

foreign jurisdiction is more appropriate, QNB and QC will obtain local counsel there and pursue

similar claims against the Forgers in that jurisdiction.

### THE DISCOVERY SOUGHT BY THE 1782 APPLICATION

37.      Based on my personal knowledge and conversations by my firm with Navacelle, I

believe the discovery sought from the Respondent here, as set forth in the draft subpoenas to the

Perles Firm, will be relevant to the foreign proceedings.   *See* **Exhibit 2**.

38.      The information sought from Respondent will enable QNB and QC to identify the

Anonymous Source and the other potential Forgers, which is critical to initiating the contemplated

judicial proceedings in a foreign tribunal.

39.      Without such information, which QNB and QC are unable to otherwise obtain,

there will be no way for Petitioners to seek legal action against the individuals who caused them

to incur significant legal fees in defending the frivolous claims of the Sotloff Action and attempted

to tarnish QNB's and QC's image and reputation.

### FRENCH COURTS ACCEPT EVIDENCE OBTAINED THROUGH SECTION 1782

40.      Based on my personal knowledge and conversations of Ropes & Gray with

Navacelle, I am not aware of any reason that the courts of France will not be receptive to the

judicial assistance requested in the Application.

41.      Based on my personal knowledge and conversations of Ropes & Gray with

Navacelle, I am not aware of any way in which the discovery requested from Respondent would

circumvent foreign proof-gathering restrictions or other policies of the courts of France or the United States.

42.     Nor do I have any reason to believe that in the event that the discovery obtained from the Application indicates that a different foreign jurisdiction is more appropriate than France to initiate foreign proceedings, that that foreign jurisdiction would not otherwise be receptive to the judicial assistance requested in the Application.

43.     Nor do I have any reason to believe that in the event that the discovery obtained from the Application indicates that a different foreign jurisdiction is more appropriate than France to initiate foreign proceedings, that the discovery requested from Respondent would circumvent foreign proof-gathering restrictions or other policies of that jurisdiction's courts or the United States.

## LIMITATION PERIODS

44.     Based on my personal knowledge and conversations of Ropes & Gray with Navacelle, the limitation period for claims of *faux et usage de faux* and *faute* is six years and five years, respectively, and therefore the potential claims QNB and QC are seeking against the Forgers in the courts of France, which relate to conduct giving rise to the Sotloff Action in May 2022, are timely.

45.     In the event that the discovery obtained from the Application indicates that a different foreign jurisdiction is more appropriate than France, I have no reason to believe that the claims QNB and QC intend to initiate in that jurisdiction would be untimely.

46.     I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 12th day of March 2024 in Washington, D.C.

_____
Douglas Hallward-Driemeier