**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | 1:24−mc−00035−LLA |

**PERLES LAW FIRM'S MEMORANDUM OF LAW IN OPPOSITION TO QATAR
NATIONAL BANK AND QATAR CHARITY'S APPLICATION FOR AN ORDER
<u>PURSUANT TO 28 U.S.C. § 1782</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY  10166-0193
(212)-351-4000

*Counsel for Respondent Perles Law
Firm*

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  FACTUAL BACKGROUND .................................................................................... 5

    A.  ISIS Murders Steven Sotloff................................................................................ 5

    B.  The Sotloffs File Suit in the Southern District of Florida................................... 6

    C.  The Southern District of Florida Issues a Confidentiality Order........................ 7

    D.  Petitioners File a § 1782 Application in the District of Columbia ..................... 8

III.  ARGUMENT ......................................................................................................... 10

    A.  Petitioners Are Estopped from Raising Arguments Previously Rejected in Another Forum...................................................................................................... 10

    B.  Petitioners' Application Fails to Meet a Statutory Requirement of Section 1782......... 14

    C.  This Court Should Exercise Its Discretion to Deny Petitioners' Application ............... 18

        1.  The First *Intel* Factor Weighs Against Granting the Application ...................... 18

        2.  The Second *Intel* Factor Weighs Against Granting the Application.................. 20

        3.  The Third Intel Factor Weighs Against Granting the Application..................... 20

        4.  The Fourth *Intel* Factor Weighs Against Granting the Application.................. 27

    D.  This Court Should Alternatively Transfer This Petition to the Southern District of Florida.............................................................................................. 29

IV.  CONCLUSION....................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abid Valech*,
  2021 WL 1062228 (S.D. Fla. Mar. 18, 2021) .........................................................17

*In re Abid Valech*,
  2020 WL 8919124 (S.D. Fla. Dec. 31, 2020) .........................................................17

*In re Accent Delight Int'l*,
  869 F.3d 121 (S.D.N.Y. 2018) ...............................................................................23

*In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take*
  *Discovery Pursuant to 28 U.S.C. Section 1782*,
  2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ...................................................21, 22

*Barham v. UBS Fin. Servs.*,
  496 F. Supp. 2d 174 (D.D.C. 2007).............................................................28, 30, 31

*In re Barnwell Enters. LTD*,
  265 F. Supp. 3d 1 (D.D.C. 2017) ...........................................................................26

*In re Campuzano-Treviño*,
  2022 WL 570254 (D. Md. Feb. 24, 2022) ..............................................................15

*Certainteed Corp. v. Knauf Insulation, SPRL*,
  849 F. Supp. 2d 67 (D.D.C. 2012) .........................................................................12

*Chiperas v. Rubin*,
  1998 WL 531845 (D.D.C. Aug. 24, 1998) ..............................................................25

*City of W. Palm Beach v. U.S. Army Corps of Eng'rs*,
  317 F. Supp. 3d 150 (D.D.C. 2018)...........................................................28, 29, 30, 31

*Matter of de Leon*,
  2020 WL 1047742 (D.D.C. Mar. 4, 2020).............................................................29

*In re Devine*,
  2022 WL 5264880 (M.D. Fla. Sept. 20, 2022) ..................................................21, 29

*Force v. Charity*,
  20-CV-2578 (BMC) (E.D.N.Y.) .....................................................................3, 6, 26

*Glock v. Glock, Inc.*,
  797 F.3d 1002 (11th Cir. 2015) ..............................................................................23

*Henkin v. Charity*,
  21-CV-5716 (RER) (E.D.N.Y.) ........................................................................3, 6, 25

*In re Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) ..................................................................................14

*In re Hulley Enters. Ltd.*,
  400 F. Supp. 3d 62 (S.D.N.Y. 2019)........................................................................23

*In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*,
  439 F. Supp. 3d 290, 305 (S.D.N.Y. 2020)..............................................................23

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*,
  2014 WL 3404955 (S.D.N.Y. July 9, 2014) .............................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).............................................................................4, 18, 20, 27

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
  2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015)..............................................................18

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018)....................................................................................19

*Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.*,
  760 F. Supp. 2d 109 (D.D.C. 2011), *aff'd sub nom. In re Application for an Ord. Pursuant to 28 U.S.C. |1782*, 473 F. App'x 2 (D.C. Cir. 2012) ....................................18

*In re Letter of Request from the Crown Prosecution Serv. Of the U.K.*,
  870 F.2d 686 (D.C. Cir. 1989)................................................................................14

*Lewis v. Parker*,
  67 F. Supp. 3d 189 (D.D.C. 2014) ..........................................................................13

*Mangouras v. Squire Patton Boggs*,
  980 F.3d 88 (2d Cir. 2020)......................................................................................16

*Martin v. Dep't of Just.*,
  488 F.3d 446 (D.C. Cir. 2007) ................................................................................11

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...................................................................................21

*Menashe v. Covington & Burling LLP*,
  552 F. Supp. 3d 35 (D.D.C. 2021) ..........................................................................19

*In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
  2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) .............................................................15

*In re Mun*,
  2023 WL 7074016 (D. Del. Oct. 26, 2023) ..............................................................27

*Mussington v. Deborah Brosnan & Assocs., LLC*,
  2023 WL 9112442 (D.D.C. Dec. 22, 2023)........................................................18, 27

*Navajo Nation v. Peabody Holding Co.*,
   255 F.R.D. 37 (D.D.C. 2009).............................................................................11

*In re of Lucille Holdings Pte. Ltd.*,
   2022 WL 1421816 (D.D.C. May 5, 2022)....................................14, 15, 16, 18

*In re Pishevar*,
   2023 WL 2072454 (D.D.C. Feb. 17, 2023) ......................................................14

*Przewozman v. Charity*,
   2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023)...................................................6

*In re Rendon*,
   2020 WL 8771274 (S.D. Fla. Nov. 5, 2020) ...................................................19

*In re Rendon*,
   519 F. Supp. 3d 1151 (S.D. Fla. 2021) .....................................................15, 20

*Republic of Gambia v. Facebook, Inc.*,
   575 F. Supp. 3d 8 (D.D.C. 2021)....................................................................23

*Savignac v. Jones Day*,
   586 F. Supp. 3d 16 (D.D.C. 2022)..................................................................26

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
   376 F.3d 79 (2d Cir. 2004)..............................................................................19

*In re Sec., Fla. Dept. of Corrections*,
   2020 WL 1933170 (11th Cir. Mar. 30, 2020)...................................................7

*Sheffer v. Novartis Pharm. Corp.*,
   873 F. Supp. 2d 371 (D.D.C. 2012).................................................................29

*Tufts v. Hay*,
   977 F.3d 1204 (11th Cir. 2020) .......................................................................29

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
   270 F. Supp. 3d 220 (D.D.C. 2017)..........................................................25, 26

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010) ....................................................................13

*In re WinNet R CJSC*,
   2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)........................................3, 21, 22

*Yamaha Corp. of Amer. v. United States*,
   961 F.2d 245 (D.C. Cir. 1992) ...................................................................11, 13

## Statutes

18 U.S.C. § 1512......................................................................................................24

28 U.S.C. § 1404........................................................................................................5

28 U.S.C. § 1404(a) ...............................................................................................................28

28 U.S.C. § 1782(a) ...............................................................................................................14

**Rules**

ABA Rules of Professional Conduct 3.3(d).........................................................................22

D.C. Bar Rules of Professional Conduct 3.3(a)(1) ..............................................................22

Fed. R. Civ. P. 11(b)(1)........................................................................................................24

Respondent Perles Law Firm, P.C. ("Perles") respectfully submits this Memorandum of Law in opposition to the application for an order to conduct discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782 (the "Application") filed by Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity ("QC") (collectively, the "Petitioners").

## I.  PRELIMINARY STATEMENT

Petitioners' Application is a brazen effort to obtain unfettered access to discovery that they are barred from utilizing under the explicit terms of a confidentiality order issued on June 23, 2023, by the United States District Court for the Southern District of Florida (the "Florida District Court") (the "Confidentiality Order").  Worse yet, Petitioners attempt to pull the wool over this Court's eyes by entirely failing to address the Confidentiality Order in their *ex parte* Application.  This Court should not countenance Petitioners' attempt to abuse the U.S. court system.

Perles served as lead counsel to the plaintiffs (the "Sotloffs") in the underlying lawsuit, *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (S.D. Fla.) (Middlebrooks, J.) (the "Sotloff Action") filed against Petitioners QNB and QC, in which the Sotloffs sought to hold Petitioners responsible for their alleged role in financing the notorious terrorist organization the Islamic State of Iraq and Syria ("ISIS") that perpetrated the heinous murder of Steven Sotloff, an American journalist and the son and brother of the Sotloffs.  In their ex parte Application, QNB and QC acknowledged that they received through discovery in the Sotloff Action a copy of a transfer record (the "Transfer Record")[1] that allegedly documented a transaction through which QNB and QC were asserted to have provided $800,000 in financing to the terrorist Fadhel al Salim, who later ordered the beheading of Steven Sotloff.  Petitioners further informed this Court that the parties to

---

[1]  A redacted copy of the Transfer Record was included in the Application as Ex. 8 to the Hallward-Driemeier Decl.  Dkt. No. 1 Ex. 8.

the Sotloff Action jointly moved to dismiss that action with prejudice when Plaintiffs disclosed that they were unable to authenticate the Transfer Record, which was the jurisdictional lynchpin of the claims pled against QNB and QC.[2]  In their present Application, QNB and QC seek to compel Perles to disclose the identity and location of the "Anonymous Source" who provided the Transfer Record to Perles, as well as the identities of every individual with whom Perles or the Anonymous Source discussed the Transfer Record.

What Petitioners fail to disclose in their ex parte Application to this Court are the terms of the Confidentiality Order, under which the unredacted Transfer Record came to be produced to QNB and QC in the Sotloff Action—i.e., with the designation "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("AEO")—that restricted disclosure of the Transfer Record to Designated Outside Counsel of Record in the Sotloff Action (and imposed explicit use restrictions on the information contained in documents designated AEO).  *See* Exhibit A to the Declaration of Robert F. Serio, dated April 17, 2024 ("Serio Decl.") ("Confidentiality Order").  Because Counsel for QNB and QC in the present Application also served as Designated Counsel of Record in the Sotloff Action, they already have an unredacted copy of the Transfer Record and can see the names of the individuals who signed the Transfer Record as "witnesses" to al Salim's alleged receipt of the $800,000 in cash.  Declaration of Steven Perles, dated April 16, 2024 ("Perles Decl.") ¶ 6.

In entering the Confidentiality Order, the Florida District Court held that the Sotloffs' "concern is not unfounded," that "by disclosing this document, and others like it, to people at QNB and QC, they will be putting their witnesses in serious danger."  *See* Serio Decl. Ex. B ("Florida

---

[2]  In the Joint Motion to Vacate, the Sotloffs "maintain[ed] that there is insufficient basis to conclude that the Purported Transfer Record is forged."  However, they acknowledged that they were "unable to authenticate" the document at that time.  *See* Dkt. No. 1 Ex. 9 ("Joint Motion to Vacate") at 5, 11.

District Court Order") at 2–3.  To the extent that one of the witnesses identified on the unredacted Transfer Record is the Anonymous Source, this Court's grant of the Application (which seeks disclosure of the "identity and location" of the Anonymous Source) would require Perles to violate the Florida District Court Confidentiality Order by identifying that witness to Petitioners without any disclosure or use restrictions, putting the safety and security of that witness at risk.

In addition, grant of the Application would require Perles to disclose to Petitioners, in contravention of the Confidentiality Order's protections over "any testimony, conversations, or presentations by . . . Counsel that might reveal Protected Material," the identities of every individual who ever discussed the Transfer Record with Perles, putting those individuals' safety at risk, too.  Moreover, such discovery would invade Perles's work product privilege as to the identities of the potential witness it chose to interview, as well as its investigators, translators, and non-testifying consulting experts on which it relies in seeking redress on behalf of the victims of terrorism.  Allowing Petitioners to do so would risk prejudice to Perles's clients in other suits against Petitioners, including *Henkin v. Charity*, 21-CV-5716 (RER) (E.D.N.Y.) and *Force v. Charity*, 20-CV-2578 (BMC) (E.D.N.Y.), through disclosure of Perles's research methodology and network of associates.

In these circumstances, Petitioners' failure to disclose that the terms of the Confidentiality Order bar the very disclosure Petitioners seek is inexcusable, particularly because the Confidentiality Order provides that even "after final disposition of [the Sotloff] litigation," its confidentiality obligations "shall remain in effect," and the Southern District of Florida court "shall retain jurisdiction over the Parties" for "the purpose of enforcing its terms."  Confidentiality Order §§ 4.1, 4.2.  Petitioners failed to fulfill their heightened duty to make full and frank disclosures when seeking ex parte relief.  *See, e.g.*, *In re WinNet R CJSC*, 2017 WL 1373918, at *9 (S.D.N.Y.

Apr. 13, 2017) (noting that "[t]he duty of candor is . . . more critical when ex parte applications are made to a court.").

This Court should deny this Application outright for numerous reasons.  First, there is an existing court order that prohibits the disclosure that Petitioners seek.  Petitioners are plainly estopped from relitigating issues that have already been ruled on by a fellow district court in entering the Confidentiality Order over Petitioners' objections.  Second, although Petitioners assert they are "currently contemplating and intend to initiate civil and/or criminal proceedings in whatever foreign jurisdiction is most appropriate," Hallward-Driemeier Decl. ¶ 32, that is far too vague to satisfy the statutory requirement that the discovery be sought "for use" in a foreign proceeding.  Third, the four discretionary factors to be considered in evaluating a § 1782 proceeding identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004), weigh against granting this Application.  As to the first discretionary factor (whether the target of the discovery request is a participant in the foreign proceeding), Petitioners' carefully worded Application nowhere assures that their foreign proceeding will not be brought against the Sotloffs, who are the real targets of the discovery sought in this Application.  The second factor, the receptivity of the foreign jurisdiction to the discovery, cannot be assessed here because Petitioners do not commit to filing their Application in any particular jurisdiction.  The third factor, whether the § 1782 application "conceals an attempt to circumvent . . . policies of a foreign country or the United States" weighs strongly against granting an application like this one that is so obviously filed in this District to circumvent another district court's order.  And the final factor, focusing on undue intrusiveness, counsels against granting discovery which would both target attorney work product and would expose the identities of witnesses whose safety is at risk.

Thus, the Application should be rejected outright.  In the alternative, in light of the existing Confidentiality Order in place in the Southern District of Florida, and that court's express retention of jurisdiction to enforce the terms of its order, this Court should transfer this proceeding to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404.

## II.  FACTUAL BACKGROUND

### A.    ISIS Murders Steven Sotloff

In 2013, Steven Sotloff, a well-respected American journalist was working in Syria documenting the Arab Spring independence movement and the broader conflicts in the Middle East.  *See* Serio Decl. Ex. C.  On August 4, 2013, he was taken hostage by the notorious terrorist organization ISIS.  *Id.*  Over the course of the next year, Sotloff was held captive by ISIS, tortured, and, on August 31, 2014, he was tragically and publicly beheaded.  *Id.*  Perles's investigation revealed that the man who ordered this heinous murder was Fadhel al Salim—an ISIS member and "judge" and an acknowledged member of the al Nusra Front, a U.S.-designated Foreign Terrorist Organization.  *See* Dkt. No. 1 Ex. 3 ("Sotloff Action Complaint") ¶¶ 2–3.  The investigation further indicated that ISIS operated, in part, using funds from QC managed by QNB, a bank 50% owned by the Qatari government.  *Id.* ¶¶ 18, 33.  This funding was believed to be evidenced by, among other things, the Transfer Record.  *Id.* ¶ 39.

At the time the Sotloff Action Complaint was filed in 2023, it did not strain credulity to believe the Transfer Record reflected Qatar-connected entities funding of ISIS, given the extensive, years-long reporting on Qatar's alleged funding of terrorist organizations.  For example, in 2017, Qatar was the subject of an unprecedented boycott, due, in part, to accusations that it was financing terrorism.  *See* Serio Decl. Ex. D at 1.  In 2019, a group of Syrian refugees filed suit against Syrian-Qatari businessmen and the Doha Bank, the largest bank in Qatar, alleging that the businessmen used the bank to funnel money to the al Nusra Front (the same terrorist organization of which al

Salim is a known associate). *See* Serio Decl. Ex. E at 1. A similar suit by Syrian refugees was filed against Qatari banks, charities, politicians, and businessmen in 2021, accusing them of "playing a central role in a money laundering operation to send hundreds of millions of dollars to jihadists in Syria." *See* Serio Decl. Ex. F. In recent months, Qatar's ties to the U.S.-designated terrorist organization Hamas, including funding and hosting the group's political leaders in Qatar, has been extensively reported. *See* Serio Decl. Ex. G at 2. This followed multiple lawsuits filed against QC and QNB accusing them of funding Hamas. *See, e.g.*, *Henkin v. Qatar Charity*, 2023 WL 2734788, at *1 (E.D.N.Y. Mar. 31, 2023) (discussing allegations that QC and QNB "facilitated" terrorist attacks by Hamas "by providing resources" to them); *Przewozman v. Qatar Charity*, 2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023) (same); *Force v. Qatar Charity*, 20-CV-2578 (BMC) (E.D.N.Y.) (same). Qatari government officials themselves have at least tacitly acknowledged that Qatar-supported terrorist organizations operated in Syria in the past. *See* Serio Decl. Ex. H at 7:55. Because of its actions, Qatar "has long faced criticism from some U.S. officials for allowing or encouraging funding of extremist groups." Dkt. No. 1 Ex. 11 at 3.

**B.**      **The Sotloffs File Suit in the Southern District of Florida**

The Sotloff Action alleged a direct link between QC, QNB, and Mr. Sotloff's murder by means of the Transfer Record, which appeared to show Petitioners transferred $800,000 to al Salim in October of 2013. Sotloff Action Complaint ¶¶ 3, 77, 101, 106, 108, 109. The Sotloff Action included four counts: aiding and abetting foreign terrorist organizations in violation of 18 U.S.C. § 2333(d); violation of the Anti-Terrorism Act, 18 U.S.C. § 2333(d); providing material support to terrorists in violation of 18 U.S.C. §§ 2339A and 2333(a); and providing material support to foreign terrorist organizations in violation of 18 U.S.C. §§ 2339B(a)(1) and 2333(a). *See id.* ¶¶ 236–90.

In December 2022, Petitioners moved to dismiss the Sotloff Action Complaint on a variety

of grounds.  *See* Dkt. No. 1 Exs. 4 ("QNB MTD Brief"), 5 ("QC MTD Brief").  The court denied

the Petitioners' motions to dismiss on May 30, 2023, finding that personal jurisdiction existed over

both defendants, that the Sotloffs had sufficiently pleaded their allegations, and that service had

been properly effectuated.  *See* Dkt. No. 1 Ex. 6 ("SDFL MTD Order") at 16, 17, 54.

**C.**     **The Southern District of Florida Issues a Confidentiality Order**

The parties to the Sotloff Action submitted to the Florida District Court competing motions

for a confidentiality order, primarily disagreeing on whether disclosure of information designated

as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" should be limited to designated

outside counsel (entirely excluding QNB and QC in-house personnel).  *See* Serio Decl. Ex. I

("Confidentiality Hearing Transcript") at 27:12–14 (noting the Sotloffs' position that a

confidentiality order was needed "for the safety of numerous individuals").  In deciding the

motions, Judge Middlebrooks noted that:

> At least one reason why an AEO designation is appropriate is if release of the
> information presents "a clear and obvious security risk."  *See In re Sec., Fla. Dept.
> of Corrections*, 2020 WL 1933170, at *1 (11th Cir. Mar. 30, 2020) . . . . Here, of
> immediate relevance is a document that Plaintiffs intend to designate as "highly
> confidential" that supports their allegation that QC wired $800,000, through its
> account at QNB, to the ISIS terrorist that ordered Sotloff's execution. (DE 85 at 3).
> Plaintiffs fear that by disclosing this document, and others like it, to people at QNB
> and QC, they will be putting their witnesses in serious danger.  Plaintiffs' concerns
> appear to be limited to the disclosure of the identities of particular witnesses. (DE
> 84 at 3).  Defendants' counsel argues that in order to assess the veracity of this
> allegation, they will necessarily have to share details of the document with QNB
> and QC. (DE 85 at 3).

Florida District Court Order at 2.

The court ruled on the motions and entered the Confidentiality Order, which permits

materials to be produced with an AEO designation, but also allows counsel to move for broader

disclosure with respect to any particular document.  Confidentiality Order § 6.2.  The

Confidentiality Order expressly requires that "[e]ven after final disposition of this litigation," the Florida District Court would "retain jurisdiction over the Parties and any other person who accepts being bound by this Protective Order for the purpose of enforcing its terms." Confidentiality Order §§ 4.1, 4.2. The Confidentiality Order thus remains in effect.

Following the entry of the Confidentiality Order and the subsequent disclosure of the Transfer Record to the Petitioner's counsel, QNB and QC stated they believed the Transfer Record to contain indicia of forgery. *See* Dkt. No. 1 Ex. 9 ("Joint Motion to Vacate") at 2. The Sotloffs, through Perles, engaged in an extensive effort to verify the Transfer Record's authenticity in light of this information, including interviewing witnesses and experts. *See* Joint Motion to Vacate at 11. Despite these efforts, the plaintiffs could not be certain they would be able to authenticate the document at trial and agreed to the September 22, 2023, joint motion to vacate the motion to dismiss and to dismiss the complaint with prejudice. *Id.* The Sotloffs expressly reserved the right to seek justice by other means, including enforcing their judgment against the Syrian Arab Republic. *Id.*

On September 28, 2023, the court granted the joint motion to vacate and dismissed the case with prejudice. *See* Dkt. No. 1 Ex. 10.

**D.    Petitioners File a § 1782 Application in the District of Columbia**

On March 12, 2024, Petitioners filed the instant Application before this Court, with no discussion of the terms of—or the fact that the unredacted transfer record continues to be governed by—the Florida District Court's Confidentiality Order, which expressly survived the termination of the Sotloff Action. *See* Dkt. No. 1-4 ("Application").[3] In their Proposed Subpoena, Petitioners

---

[3] Petitioners briefly mention the existence of the Confidentiality Order in passing, but entirely fail to mention any of the key terms of that Order, the scope of that Order, or the fact that the Order remains in effect. *See, e.g.*, Application at 6 (mentioning that "the court ordered Plaintiffs to

define the "Anonymous Source" to mean "the individual(s) who gave, sent, shared, or otherwise communicated" the Transfer Record to Perles.  Dkt. No. 1 Ex. 2 ("Proposed Subpoena") at 7. Petitioners seek "documents and communications sufficient to identify the identity and location of the Anonymous Source," plus the identities of all individuals with whom Perles or the Anonymous Source discussed the Transfer Record.  *Id.* at 8–9.

The Transfer Record was designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Confidentiality Order.  Perles Decl. ¶ 6.  The unredacted Transfer Record thus was produced only to certain of outside counsel for QNB and QC in the Sotloff Action who are also counsel of record in this proceeding: Douglas Hallward-Driemeier, Michael McGovern, John Hillebrecht, Kevin Walsh, Jessica Masella, and Michael Lewis.  *See id.*

Accordingly, Petitioners' counsel is aware that the unredacted Transfer Record identifies a number of individuals who signed the Transfer Record as witnesses.  In the redacted Transfer Record to which QNB and QC personnel and the public have unfettered access, the names of the presumed witnesses to the transaction were redacted to protect their safety.  Petitioners' counsel has the names, but under the terms of the Confidentiality Order, the unredacted Transfer Record cannot be disclosed, and Petitioners' counsel cannot utilize the information for any purpose other than defending the now-dismissed Sotloff Action.  *See* Confidentiality Order § 7.1.  The Confidentiality Order specifically provides that individuals subject to it are "prohibited from disseminating or using in any fashion, manner, or method the Protected Material, or any summaries or abstracts thereof, in any lawsuit arbitration, claim, or proceeding other than the [Sotloff] Action in any domestic or international forum."  *Id.*

---

produce the Purported Transfer Record within three days of entry of a confidentiality order," but neither citing the Order as an exhibit nor addressing its terms).

To the extent that one or more of the individuals identified on the unredacted Transfer Record is the Anonymous Source, the discovery sought in this Application would directly violate the Florida District Court's Confidentiality Order by requiring Perles to disclose attorneys' eyes only information unrestrictedly to QNB and QC personnel for use in foreign proceedings and thereby expose such individuals to the safety risks the Florida District Court found justified its Order.   Even if the Anonymous Source is not named directly on the Transfer Record, the Confidentiality Order would still be violated here given that the Confidentiality Order covers not only the document, itself, but a much broader set of material including "any testimony, conversations, or presentations by Parties or their Counsel that might reveal" confidential information.  *See* Confidentiality Order § 3.

Moreover, the discovery sought here is improper as an invasion of the investigative work product of Perles, a leading law firm seeking redress for victims of terrorism, by exposing its investigative sources and methods and network of investigators, translators, and consulting experts, all of whom could become the targets of terrorists.   Furthermore, Petitioners seek to utilize the Application as an improper way to delve into Perles's non-testifying consultant pool also used in other, ongoing cases against Petitioners.   Perles can only speculate as to Petitioners' motive in failing to inform this Court about the terms of the Confidentiality Order, and the circumstances surrounding its entry.

### III.  ARGUMENT

**A.**     **Petitioners Are Estopped from Raising Arguments Previously Rejected in Another Forum**

The doctrine of collateral estoppel bars Petitioners from relitigating before this Court issues that Judge Middlebrooks of the Southern District of Florida already considered and ruled on in the underlying action.  Collateral estoppel, or issue preclusion, bars parties from raising an already-

litigated issue in subsequent actions if such preclusion satisfies three requirements: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case," (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case," and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). Collateral estoppel principles apply with full force to discovery orders. *See, e.g.*, *Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 44–45 (D.D.C. 2009) ("Under the doctrine of issue preclusion, [a past discovery order] is binding on the trial court in this case and forecloses re-litigation . . . ."). All three of these requirements are plainly satisfied here.

The exact same issue Petitioners raise before this Court—discovery regarding the identities of witnesses to or concerning the Transfer Record—was litigated and ruled on by Judge Middlebrooks of the Southern District of Florida less than a year ago. *See generally* Serio Decl. Ex. J ("Sotloff Confidentiality Motion"); Serio Decl. Ex. K ("Petitioners' Confidentiality Motion"); Florida District Court Order. As noted in the Sotloffs' Motion for a Confidentiality Order, the crux of the dispute was the protection of the identity of witnesses concerning the Transfer Record who might be at great personal risk. *See, e.g.*, Sotloff Confidentiality Motion ¶ 11 ("Plaintiffs seek a confidentiality order controlling the disclosure of confidential information to safeguard the identify of witnesses.") ¶ 14 ("Protecting the safety of witnesses is of paramount importance."), ¶ 15 ("By maintaining control over the disclosure of sensitive materials that could expose [witness] identifies, the court is able to minimize the risk of such retaliation and maintain the witnesses' safety."), ¶¶ 20-21, 24, 25 (same). Judge Middlebrooks, in granting the relief sought by the Sotloffs, rightly summarized the core of the parties' dispute as follows: "Plaintiffs fear that by disclosing this

document [the Transfer Record], *and others like it,* to people at QNB and QC, they will be putting their witnesses in serious danger.  Plaintiffs' concerns appear to be limited to the disclosure of the identifies of particular witnesses."  Florida District Court Order at 2.  The Confidentiality Order issued by Judge Middlebrooks covers both the Transfer Record itself and "any testimony, conversations, or presentations by Parties or their Counsel that might reveal" material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," such as the Transfer Record.  *See* Confidentiality Order § 3.

      In direct contradiction of Judge Middlebrooks' Confidentiality Order, Petitioners ask this Court to order Perles to provide "the identity and location of the Anonymous Source" (defined as "the individual(s) who gave, sent, shared or otherwise communicated" the Transfer Record to Perles) and "the identities of individuals with whom [Perles] or the Anonymous Source discussed the Purported Transfer Record," Proposed Subpoena at 8–9—in other words "conversations . . . by . . . Counsel that might reveal" the identity of witnesses.  Confidentiality Order § 3.  Not only were the same issues raised in the Florida District Court, they were "actually and necessarily determined" by Judge Middlebrooks.  Issues are "actually and necessarily determined" for purposes of collateral estoppel where the court's decision is "premised on the argument[s]" the parties put forth on those issues.  *Certainteed Corp. v. Knauf Insulation, SPRL*, 849 F. Supp. 2d 67, 74 (D.D.C. 2012).  After briefing and oral argument, Judge Middlebrooks put in place a Confidentiality Order that allowed the Transfer Record to be produced in unredacted form only to Petitioners' counsel (the same counsel that represent Petitioners before this Court).[4]  In crafting

---

[4] Judge Middlebrooks made clear that the Confidentiality Order extended to the identity of witnesses, as well.  He even specifically noted that if "Defendants' attorneys believe that disclosing the identify of any such witness to their clients is crucial to their defense, then they can file a motion" with Judge Middlebrooks "to try to obtain that relief."  Florida District Court Order at 3.

the Confidentiality Order, Judge Middlebrooks evaluated "Plaintiffs' concerns" surrounding "the disclosure of the identities of particular witnesses," as well as arguments from "Defendants' counsel [that] . . . they will necessarily have to share details of the document with QNB and QC." Florida District Court Order at 2.   Judge Middlebrooks thus "actually" weighed the parties' arguments in making his final determination and those arguments were "necessary" to his final determination on the discovery issues.   In this Court, QNB and QC seek documentary and deposition evidence of witnesses' identities and locations without the "Attorneys' Eyes Only" restrictions imposed by the Confidentiality Order, enabling QNB and QC personnel to have access to such witnesses' identities, and thereby putting the witnesses at risk of physical harm or death.

Enforcing the Confidentiality Order will not "work a basic unfairness" to Petitioners.   To the contrary: allowing Petitioners to relitigate an issue that has already been fully briefed, addressed orally, and ruled on by another District Court Judge would be fundamentally unfair to Perles and their clients.   "In examining 'unfairness' for the purposes of issue preclusion, courts within the D.C. Circuit have been primarily concerned with whether 'the losing party clearly lacked any incentive to litigate the point in the first [proceeding], but the stakes of the second [proceeding] are of a vastly greater magnitude.'"   *Lewis v. Parker*, 67 F. Supp. 3d 189, 205 (D.D.C. 2014) (quoting *Yamaha*, 961 F.2d at 254).   This is plainly not the case, here.   The Petitioners emphasized in their arguments before Judge Middlebrooks that the discovery issues to be subject to the Confidentiality Order were of "paramount importance."   *See* Sotloff Confidentiality Motion at 4.

Petitioners' attempts to re-litigate an issue that another District Court has already plainly ruled on is quintessentially the type of behavior collateral estoppel principles are designed to preclude.   This Court should deny Petitioners' § 1782 petition on this ground alone.

**B.**     **Petitioners' Application Fails to Meet a Statutory Requirement of § 1782**

In assessing a § 1782 application, "[a] district court has the authority to grant an application when . . . (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (citing 28 U.S.C. § 1782(a)).  Perles does not dispute that it is found within this District, nor does it dispute that the Petitioners are interested persons with respect to the discovery sought.

However, Perles does dispute that Petitioners satisfy the second statutory requirement. Petitioners' Application should be denied because they have not established that discovery is sought "for use in a proceeding before a foreign or international tribunal."  28 U.S.C. § 1782(a). No such proceeding currently exists.  As described in the Declaration submitted under penalty of perjury by Petitioners' counsel: "the Petitioners are currently contemplating and intend to initiate civil and/or criminal proceedings in whatever foreign jurisdiction is most appropriate to pursue claims against the Anonymous Source, as well as any other individual who may have participated." Hallward-Driemeier Decl. ¶ 32.  This vague statement of intent to file some type of suit, at some undefined point in time, in some undetermined jurisdiction, against some unnamed individual(s) is not enough to satisfy the "for use" requirement.  "Where there is not a pending proceeding in a foreign or international tribunal, the [for use] requirement can be a tricky one." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *13 (D.D.C. May 5, 2022).  "Requiring a section 1782 applicant to show that a foreign proceeding is in reasonable contemplation at the time it first seeks the assistance of a federal court to issue a subpoena helps to forestall the sort of fishing expeditions unsanctioned by the Federal Rules of Civil Procedure." *Id.* at 10.  "The 'reasonable contemplation'

requirement helps to 'guard against abuse of section 1782.'" *Id.* at 13 (quoting *In re Letter of Request from the Crown Prosecution Serv. Of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989)).[5]

Courts in this district and others routinely reject § 1782 applications, like the present, where Petitioners "d[o] not know where, when, or even against whom the allegedly contemplated foreign proceedings would be brought." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *15; *see In re Campuzano-Treviño*, 2022 WL 570254, at *4 (D. Md. Feb. 24, 2022) (granting motion to quash application when petitioner "offer[ed] no concrete timeline for projected timeline of his claim"); *In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (finding the "reasonable contemplation" requirement not met where the applicants "[did] not identify with particularity the types of proceedings they expect to bring against the purported [defendants], nor the countries or tribunals in which they may take action (aside from cursory references to England and Anguilla)").

Petitioners' present Application—which entirely fails to identify even the most basic contours of their suit—is just the type of fishing expedition the "reasonable contemplation" standard is meant to guard against. Petitioners have not identified the jurisdiction where they intend to bring their claims, the persons against whom they intend bring their claims, what claims they intend to bring, or when they intend to bring them. Nor have they ruled out filing suit against

---

[5] The only two cases Petitioners cite to support their "for use" position are inapposite. *In re Hornbeam Corp.*, 722 F. App'x 7 (2d Cir. 2018), an unpublished, out-of-Circuit summary order, involved a petitioner that had already "brought two related actions" in the specified forum against the intended defendants, which provided credence to its guarantees that another suit was within reasonable contemplation at the time of the application. *Id.* at 9. Here, there are no such guarantees, as there is no established history of Petitioners having brought cases against the alleged forgers. *In re Pishevar*, 2023 WL 2072454 (D.D.C. Feb. 17, 2023), involved a petitioner who clearly identified the target and location of the foreign proceeding, whereas Petitioners, here, fail to clearly identify either.

the Sotloffs.[6]  Nothing in their Application suggests their suit will be limited solely to the alleged "forgers."

A § 1782 application also must offer some concrete or projected timeline to satisfy the "for use" statutory prong.  *See, e.g.*, *In re Rendon*, 519 F. Supp. 3d 1151, 1157 (S.D. Fla. 2021) (rejecting a § 1782 petition where "a timeline [could not] be developed given that Applicants need[ed] the evidence requested in their Application to determine whether they have a cognizable claim, and if so, against whom"); *In re Campuzano-Treviño*, 2022 WL 570254, at *4 (denying application when petitioner "offer[ed] no concrete timeline for the projected filing of his claim"). Here, Petitioners fail to provide an even approximate or projected timeline.  Petitioners' counsel states only that his clients are "contemplating" bringing an action.  Hallward-Driemeier Decl. ¶ 32. This vague assertion is not enough to satisfy the statutory requirements of § 1782.  This is especially true, where, as here, not only have Petitioners not yet filed suit, they admit they "*cannot* bring such suit*" until and unless their Application is granted.  Application at 13 (emphasis added).[7]

Petitioners cannot have it both ways.  In one breath they claim this Application should be granted on the basis of their imminent foreign suit, and in the next they note that if this Application is denied they will not and cannot file *any* suit *anywhere*.  Section 1782 is not designed as a tool that allows a petitioner to investigate and create a claim, it is meant to provide discovery in support of an existing claim.  *See In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *10 (noting that the under "reasonable contemplation" requirement works to prevent applicants from improperly using § 1782 as "leverage to extract information from a target when the applicant is

---

[6] *See* Declaration of Eric Bouffard, dated April 17, 2024, ¶ 7.

[7] Petitioners claim that "there is presently no other avenue, except through the Perles Firm, for Petitioners to uncover the identities of the Anonymous Source or other Forgers."  Application at 15.  Petitioners cite no case law to support the relevance of this statement to the § 1782 analysis.

still investigating whether it might have a viable cause of action in a foreign jurisdiction"); *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (recognizing that § 1782 petitions should be denied where they are simply "fishing expedition[s]" or are so premature as to be "putting the cart before the horse") (quotation marks omitted), *aff'd sub nom. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015); *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020) (finding proceedings not in reasonable contemplation where the claims to be brought "depend[ed] on what the evidence shows" (emphasis omitted)).

Petitioners also fail to identify with particularity the jurisdiction in which they intend to file.  *See* Hallward-Driemeier Decl. ¶ 32 (stating Petitioners may bring proceedings in "whatever foreign jurisdiction is most appropriate").  Petitioners indicate that they "believe" France is the proper jurisdiction for their suit but acknowledge that that is merely a guess and that in reality they "do not know in which specific jurisdiction they will bring their claims."  Application at 15; *see also id.* (Petitioners are still attempting to "*ascertain* the appropriate foreign jurisdiction"); *id.* at 16 (Petitioners "do not yet fully know in which foreign jurisdiction they will bring their claims").  This type of rank speculation is not sufficient in a § 1782 Application.  *See, e.g.*, *In re Abid Valech*, 2020 WL 8919124, at *7 (S.D. Fla. Dec. 31, 2020) (recommending denying a § 1782 application where the legal theory provided for the contemplated foreign proceeding was based on "speculation" and "assumption[s]"), *report and recommendation adopted*, 2021 WL 1062228 (S.D. Fla. Mar. 18, 2021).

In sum, Petitioners do not know who they intend to sue, where they intend to sue them, what claims they intend to bring (which necessarily depend on which jurisdiction is selected), or when they intend to make their filing, and for this reason the Court should deny Petitioners' § 1782

Application.  If the "for use" prong of § 1782 is to be given any meaning, Petitioners have failed

to meet it.  In reality, they are using the § 1782 device to escape the dictates of the Florida District

Court's Confidentiality Order and to attempt to discover information protected by Perles's work

product privilege.

**C.**      **This Court Should Exercise Its Discretion to Deny Petitioners' Application**

Even if Petitioners satisfied § 1782's statutory prerequisites (they do not), this Court still

retains broad discretion to deny § 1782 discovery.  The Supreme Court in *Intel* identified four

factors relevant to whether to permit discovery under § 1782: (1) whether the entity from whom

discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal,

the character of the foreign proceedings, and the receptivity of the foreign government to receiving

United States federal judicial assistance; (3) whether the request conceals an attempt to circumvent

foreign proof-gathering restrictions or other policies of that country or the United States; and (4)

whether the requests are unduly intrusive or burdensome.  *Intel Corp. v. Advanced Micro Devices,*

*Inc.*, 542 U.S. 241, 264–65 (2004).

All of the *Intel* factors weigh against granting Petitioners' request for discovery.

**1.**      **The First *Intel* Factor Weighs Against Granting the Application**

The first *Intel* factor requires courts to consider "whether the target of the discovery request

is a participant in the foreign or international proceeding."  *Mussington v. Deborah Brosnan &*

*Assocs., LLC*, 2023 WL 9112442, at *6 (D.D.C. Dec. 22, 2023).  Because there is no foreign

proceeding against which to evaluate, the first *Intel* factor disfavors the Application.  Petitioners

should not be allowed to support their petition now with arguments about a hypothetical foreign

proceeding, the location and nature of which could change without reason or notice.

Indeed, courts in this jurisdiction and others consistently find that "with no clear indication

of who would be sued where, it was difficult to intelligently assess the question of burden."  *In re*

*of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *16 (D.D.C. May 5, 2022) (denying application); *see also Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.*, 760 F. Supp. 2d 109, 114 (D.D.C. 2011) (noting that the first *Intel* factor weighed against application where no formal criminal proceedings had yet been filed, as there was no certainty that the Respondents were not the defendants), *aff'd sub nom. In re Application for an Ord. Pursuant to 28 U.S.C. |1782*, 473 F. App'x 2 (D.C. Cir. 2012); *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *7 (S.D.N.Y. Feb. 5, 2015) (indicating that the first *Intel* factor weighed against granting discovery where the petitioner sought discovery that could ultimately be used in enforcement against the target).

As discussed above, Petitioners have also provided no clarity about whether the Sotloffs—the real target of the discovery sought in the present Application—will be participants in the foreign proceedings.  Courts consistently find that when litigants seek documents from a law firm, rather than from the client on whose behalf the law firm has gathered or retained the sought after discovery, the real party in interest is the client.  *See Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 43 (D.D.C. 2021) (suggesting that a petition aimed at a law firm was merely a "less efficient route" to gather discovery from the firm's client); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (recognizing that when a law firm is "holding the documents because it represented [a client] in prior litigation," the client is "the real party from whom documents are sought"); *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP., 376 F.3d 79, 85 (2d Cir. 2004) (same).  Because Petitioners have given no assurances that the Sotloffs will not be one of the unnamed "other individuals" against whom they "intend to initiate" a foreign proceeding, there is no way to assess at this time whether the true target of this § 1782 discovery

request (the Sotloffs, not Perles) is, or will be, a participant in the foreign proceeding.  Application at 15.

## 2.     The Second *Intel* Factor Weighs Against Granting the Application

There is no way to assess how receptive a foreign jurisdiction would be to the discovery sought herein because Petitioners, admittedly, do not know where they intend to file the present suit.  Application at 22 (Petitioners "do not know in which specific jurisdiction they will bring their claims"); *id.* (Petitioners are still attempting to "*ascertain* the appropriate foreign jurisdiction") (emphasis in original); *id.* at 23 (Petitioners "do not yet fully know in which foreign jurisdiction they will bring their claims").  Given the complete uncertainty regarding which jurisdiction's policies should be considered as part of this analysis, preventing Respondent from evaluating the issue, this factor must be considered as weighing strongly against Petitioners.  *See In re Rendon*, 2020 WL 8771274 (S.D. Fla. Nov. 5, 2020) (denying application where foreign proceedings had not begun and there was no evidence about the proceedings' receptivity to foreign materials ), *report and recommendation adopted*, 519 F. Supp. 3d 1151 (S.D. Fla. 2021).

## 3.     The Third Intel Factor Weighs Against Granting the Application

Under the third *Intel* factor, courts are directed to consider whether a § 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country *or the United States*."  *Intel*, 542 U.S. at 264–65 (emphasis added).  This factor should be dispositive here, as this Application plainly attempts to circumvent United States proof-gathering restrictions and violates several well-established principles of the law and public policy of this country.  As set forth below: (1) the Application seeks discovery in contravention of a prior United States District Court order that remains in force and cannot be challenged under principles of collateral estoppel, (2) the Application's omissions suggest that it was made in bad faith or for an improper purpose, (3) there is no way to assess whether the Application would circumvent

foreign-proof gathering restrictions, because Petitioners have not identified the foreign jurisdiction in which this suit will be filed, (4) the witnesses whose names would be disclosed if this Application is granted would be at immediate and direct risk of physical harm, and (5) the information Petitioners seek is privileged attorney-work product.

i.      **The Application Would Circumvent an Order of a United States District Court**.  As discussed *supra*, Section III.A, and *infra*, Section III.D, the discovery at-issue in this application is already subject to an existing court order to which the Petitioners remain bound.  Confidentiality Order § 4.2 ("This Court shall retain jurisdiction over the parties and any other person who accepts being bound by this Protective Order for the purpose of enforcing its terms."); Florida District Court Order at 3 (Petitioners "can file a motion to try to obtain" "the identity" of witnesses that are withheld pursuant to the Confidentiality Order).  Petitioners ask this Court to issue an order allowing them to violate the existing Confidentiality Order.  Allowing Petitioners to evade the Confidentiality Order under the guise of a § 1782 application would run contrary to the principles of collateral estoppel and finality which undergird our judicial system.  *See supra* Section III.A.  Likewise, in *In re Devine,* 2022 WL 5264880 (M.D. Fla. Sept. 20, 2022), the court rejected a § 1782 application where there was an existing protective order in place governing the requested documents.  *Id.* at *3.  In denying the request, the court noted that "[t]he current motion is clearly an attempted end-run around prior rulings and pending appeals.  Any disclosure of the documents to [the petitioner] in the circumstances presented would contravene the Protective Order."  *Id.* Petitioners' attempt to circumvent a ruling on the same issue, in a different forum, should not be tolerated by this Court.

ii.     **Application's Omissions Demonstrate That It Was Made in Bad Faith**.  Petitioners' attempt to circumvent the Florida District Court's Confidentiality Order is further evidenced by

their inexcusable failure to disclose to this Court the fact that the Confidentiality Order bars the very disclosure Petitioners seek.  Section 1782 applications have been found to have been made in bad faith and denied when they omit relevant information.  *See, e.g.*, *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (suggesting a § 1782 application may have been made in bad faith where the petitioner "already possesses the materials sought in her application"); *In re WinNet R CJSC*, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (discussing attorneys' "duties of candor" and denying § 1782 application where applicant "was not candid" regarding "decisions already issued" in another relevant court proceeding); *In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *7 (S.D.N.Y. Oct. 10, 2012) (noting omissions "which suggest that [the petitioner] may have tried to circumvent some of the safeguards instituted in the United States to prevent discovery from becoming a vehicle for unwarranted expense and harassment").  This is so because the omission of relevant information in a § 1782 application is, in and of itself, evidence that the application may be an attempt to circumvent the undisclosed ruling or order.  *See, e.g.*, *In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *7 (S.D.N.Y. Oct. 10, 2012) (finding the third *Intel* factor weighed in favor of quashing a subpoena where the applicant did not disclose critical information, including relevant prior court rulings).[8]

---

[8]  *See also* ABA Rules of Professional Conduct 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").  As explained in the comment to this rule, lawyers in an ex parte proceeding have a "duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."  *Cf.* D.C. Bar Rules of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly: Make a false statement of fact or law to a tribunal . . . .").  Whether or not Petitioners believed the Confidentiality Order governs the requests in the present Application (it plainly does), the details of the Order and the extensive litigation about its scope are, at a minimum, "material facts"

Where, as here, Petitioners failed to include the details of the Confidentiality Order or related briefing, at a minimum, this Court should find that the third *Intel* factor weighs against granting the requested discovery.

**iii.     Foreign Proof-Gathering Restrictions**.  There is no way for Petitioners, Respondent, or this Court to assess whether Petitioners' Application would circumvent foreign proof-gathering restrictions.  As discussed in detail, *supra* Section III.B, Petitioners fail to sufficiently identify the jurisdiction in which their prospective suit would be brought.  Indeed, Petitioners admit they do not know where they will file suit because they are still attempting to "*ascertain* the appropriate foreign jurisdiction."  Application at 22 (emphasis in original).[9]  Petitioners' counsel admits that the suit will be brought in "whatever" jurisdiction they, in the future, determine is appropriate.  Hallward-Driemeier Decl. ¶ 32.

Courts have been especially wary of granting § 1782 discovery to applicants who do not identify with specificity where they intend to use the discovery, or who appear likely to use the discovery for purposes other than those included in its application.  "This kind of subterfuge is a valid reason to reject a § 1782 application in the first place."  *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015); *see also In re Accent Delight Int'l*, 869 F.3d 121, 135 (S.D.N.Y. 2018) (noting that evidence that a party is using a § 1782 application as a ruse for obtaining discovery for use in other proceedings may be a valid reason to deny the application altogether).

---

necessary for this Court to make an "informed decision," and therefore were required to be disclosed as part of Petitioners' ex parte Application.  *See In re WinNet R CJSC*, 2017 WL 1373918, at *9 (holding that an attorney's duty of candor is always "fundamental," but this duty is "more critical when ex parte applications are made to a court").

[9] Petitioners' lengthy recitation of the elements of French law claims and proceedings is of limited or nil value, given that Petitioners do not know in which foreign jurisdiction they will file.

iv.     **Witness Protection and Anti-Terrorism**.  If granted, Petitioners' access to the sought-after discovery poses undue risks to the safety and welfare of the individuals who served as witnesses, or as Perles's investigators, translators, and consultants in relation to the Sotloff Action.  Under the third *Intel* factor, this Court has broad discretion to deny Applications on the grounds that they violate, frustrate, or offend United States public policy.  *See, e.g.*, *In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 305 (S.D.N.Y. 2020) (denying a § 1782 application based on the U.S. public policy that undergirds the reporter's privilege); *Republic of Gambia v. Facebook, Inc.*, 575 F. Supp. 3d 8, 15 (D.D.C. 2021) (rejecting § 1782 application on the grounds that U.S. law and public policy concerns over privacy protection would prohibit the disclosure of requested documents); *see also In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) (affirming a lower court's determination that § 1782 should be denied based upon U.S. public policy).

The United States judicial system requires that parties and witnesses involved in litigation be protected from harassment or retribution.  This is not only a moral tenet of our judicial system, it is the law.  *See* 18 U.S.C. § 1512 (criminalizing the tampering with a witness, victim, or an informant); Fed. R. Civ. P. 11(b)(1) (describing an "improper purpose" of litigation to include harassment).  The safety and protection of participants in a judicial proceeding, particularly individuals suing powerful entities with vast resources, is fundamental to the proper functioning of our legal system.

Here, witnesses identified to the Petitioners could be in grave danger should their identities become known to terrorists or the foreign governments relevant to the Sotloff Action.  Indeed, during the course of the investigation related to the Sotloff Action, the translator for a potential witness reported to French police that they were intimidated and outright threatened by an

individual acting, if not at the *behest* of QNB and QC, then at least against the Sotloffs' interest. Perles Decl. ¶ 13.  A member of the Perles Law Firm was meeting with a potential witness and translator at a law office in France.  *Id.*  As reported to French law enforcement, during this meeting, which occurred in the middle of the afternoon, the translator's car was broken into, evidentiary materials were removed, and a note in Arabic was left behind which, when translated, read "This is a warning."  *Id.*  The translator also reportedly received threats by encrypted voice message including "Why risk your life for a rotting Jewish corpse?," apparently referring to Steven Sotloff, who was a Jewish American.  *Id.* ¶ 14.  This threat not only illustrates the measures some individuals are willing to undertake to dissuade witnesses, it also plainly underscores why the Confidentiality Order is necessary to properly protect witnesses' identities.

Additionally, given Petitioners' ties to the Qatari government, which has been tied to multiple efforts to finance terrorism over the last several years, *see supra* Section II.A, this case carries with it implications that extend far beyond this litigation.  Allowing the names of adversarial witnesses or Perles's investigators, translators, and consultants to be disclosed would stifle efforts of families and others harmed by terrorist activity to find and obtain the cooperation of witnesses and ultimately carry out justice.

In 2020, allegations of witness tampering, harassment, and intimidation were levied against officials working for the state of Qatar in connection with a lawsuit filed in the U.K. against Doha National Bank in Qatar—whose biggest shareholder, like QNB, is the government-owned Qatar Investment Authority.  *See* Serio Decl. Ex. L; Serio Decl. Ex. M.  The allegations accused Qatari officials of intimidating claimants in an anti-terrorism suit into dropping their claims, and attempting to identity those involved in the case despite the fact that they were protected by anonymity orders.  *Id.*  Should Petitioners be successful in their attempt to make public the name

of a cooperating witness or Perles's investigators, translators, and consultants here, current and ongoing anti-terrorism litigation would be frustrated greatly, including cases currently being brought against QNB and QC in other jurisdictions, which is no doubt Petitioners' hope. *See, e.g.*, *Henkin v. Charity*, 21-CV-5716 (RER) (E.D.N.Y. filed Oct. 13, 2021); *Force v. Charity*, 20-CV-2578 (BMC) (E.D.N.Y. filed June 10, 2020).

**v.     Attorney-Work Product**. This Application is also an attempt to side-step attorney work-product protections by requiring the Perles Law Firm to disclose, to their adversary, the names of individuals whom the Firm spoke with as part of their representation of the Sotloffs. The identity of persons interviewed by counsel is protected by the work-product privilege. *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) (holding that the identity of persons interviewed by counsel was protected by the work-product doctrine); *Chiperas v. Rubin*, 1998 WL 531845, at *1 (D.D.C. Aug. 24, 1998) (holding that a defendant's request for the plaintiff to identify the witnesses he had interviewed "crosse[d] the boundary into [requests for] work product"). When assessing whether a request of this kind is protected, courts take into consideration the distinction between permissible requests that seek the identification of individuals "with knowledge or facts about a case," with impermissible requests that seek the identification of those persons who opposing counsel thought were important enough to contact or interview. *All Assets*, 270 F. Supp. 3d at 225.

Here, Petitioners are requesting that Perles reveal the identity of specific sources who the Firm selected and spoke to in connection with their representation of the Sotloffs for the express purpose of suing those individuals for speaking with Perles. While Petitioners liken their request to an "effort to identify witnesses who might have factual information," Application at 17 n.3 (quoting *Savignac v. Jones Day*, 586 F. Supp. 3d 16, 21 (D.D.C. 2022)), their request, in reality,

goes far beyond this in both the level of specificity it requests and the purpose for which it is being requested.  Petitioners seek the identity of the individuals the law firm spoke with to bring an action against them.  Petitioners do not request a general list of individuals who have relevant information.  They ask for information "sufficient to identify" the names of the specific individuals who provided specific information that formed the basis for the Perles Law Firm's principal argument.  Proposed Subpoena at 8–9.  And in aiming to identify everyone with whom Perles discussed the Transfer Record, Petitioners seek to invade the work product privilege by identifying investigators, translators, and experts retained by Perles.  A party should not be able to wield its separate *potential* lawsuit against a foreign non-party in order to access what is otherwise inaccessible protected work-product from another party's counsel.  If a party cannot access this information through domestic discovery, then it should not be able to access this information through a § 1782 application.[10]

Considering the overriding implications of this decision on matters of public policy, and Petitioners' use of § 1782 to conceal its attempt to circumvent the proof-gathering restrictions and other policies of the United States, "[t]he third Intel factor strongly favors Respondents," and the application should be denied.  *In re Mun*, 2023 WL 7074016, at *4 (D. Del. Oct. 26, 2023) (holding that if a district court would deny an "application under the discretionary factors, [it] need not consider whether [the] application meets § 1782(a)'s statutory requirements").

### 4.     The Fourth *Intel* Factor Weighs Against Granting the Application

---

[10] Petitioners suggest that "section 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings."  Application at 16 (quoting *In re Barnwell Enters. LTD*, 265 F. Supp. 3d 1, 12 (D.D.C. 2017)).  But the interest in protecting attorney work product here is not an interest of the foreign court, but instead is a policy of the United States.  Allowing Petitioners to use the Application to circumvent that American interest would be contrary to the purposes of § 1782.  *See Mussington*, 2023 WL 9112442, at *12 (explaining "the principle of comity that underlies" § 1782).

The fourth *Intel* factor considers "whether the request is 'unduly intrusive or burdensome.'" *Mussington*, 2023 WL 9112442, at *6 (quoting *Intel*, 542 U.S. at 264–65). Even narrowly targeted discovery can be "unduly intrusive" when the information it seeks is highly sensitive or confidential. In *Intel*, the Court suggested that a request that sought confidential materials could be "unduly intrusive." *See* 542 U.S. at 265 (collecting cases instructing that courts should consider the need to protect the confidentiality of materials sought by a § 1782 petition). Here, the confidentiality of the requested discovery makes the Petition highly intrusive. The witnesses who came forward did so based on the understanding that their identities would be protected, so that they could speak freely and openly, without risk of harm to their person, regarding international terrorism. All conversations with Perles's investigators, translators, and consultants similarly took place under the normal expectation that such conversations are protected by the attorney work product doctrine.

Judge Middlebrooks, ruling on just this issue, found it appropriate to allow the names of witnesses to only be provided under a strict Confidentiality Order that limited the production to Petitioners' counsel. *See* Florida District Court Order at 2–3. The terms of the Confidentiality Order were put in place to combat the very real fear that disclosure could endanger the lives of the witnesses. Allowing Petitioners to circumvent the underlying Confidentiality Order and discard the active security concerns would wholly discount the highly sensitive nature of the discovery being sought. Given that the Application is so "unduly intrusive" as to violate a Confidentiality Order premised on serious danger to individuals' lives, and additionally seeks privileged information regarding Perles' network of investigators and consultants, the fourth *Intel* factor counsels against granting the Petition.

All four *Intel* factors support denial of Petitioners' § 1782 Application.

**D.**     **This Court Should Alternatively Transfer This Petition to the Southern District of Florida**

To the extent the Application is not rejected outright, this Court should transfer the Application to the Southern District of Florida, where venue is more appropriate.   "For the convenience of parties and witnesses, [and] in the interest of justice," 28 U.S.C. § 1404(a) permits "a district court [to] transfer any civil action to any other district or division where it might have been brought."   "In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action 'might have been brought,' . . . and then must balance the private and public interests . . . to determine 'whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer.'" *City of W. Palm Beach v. U.S. Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 153 (D.D.C. 2018) (quoting *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 177 (D.D.C. 2007)).   The instant Application could have been brought in the Southern District of Florida, and both the private and public interest counsel in favor of a transfer.

"In cases involving a federal question, a plaintiff may properly bring an action in a judicial district where a defendant resides," and a "corporate defendant is considered a resident in any judicial district in which it is subject to personal jurisdiction."   *Barham*, F. Supp. 2d at 177. Personal jurisdiction exists over Perles in the Southern District of Florida, and the instant Application "might have been brought" there because Perles pursued the Sotloff Action in that district.   *See, e.g.*, *Devine*, 2022 WL 1658586 (granting motion to transfer and finding jurisdiction over "out-of-state law firm with respect to claims arising out of the firm's [in-state] representation").   Personal jurisdiction over a law firm exists in a judicial district for purposes of a § 1782 petition where the information the petition seeks relates to work the firm did for a client in that district.   *See Matter of de Leon*, 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020); *accord*

*Tufts v. Hay*, 977 F.3d 1204, 1210–12 (11th Cir. 2020) (upholding personal jurisdiction over defendant law firm where the suit related to work the firm did in an underlying Florida-based action). As Petitioners concede, this Petition relates directly to work Perles completed on behalf of the Plaintiffs in the underlying Southern District of Florida action. *See* Application at 16 (arguing that "the Perles Firm has in its possession, custody, and control information" relating to claims about the underlying action).

If the case is not dismissed outright, private interests favor a transfer to the Southern District of Florida. Courts consider private interest factors including "1) the [petitioner's] choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses . . .; and 6) the ease of access to sources of proof." *W. Palm Beach*, 317 F. Supp. 3d at 154 (quoting *Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012)). While courts "ordinarily" give deference to petitioner's choice of forum, "[this] deference is lessened" where the petitioner does not choose their "home forum" and where "there is an insubstantial factual nexus between the case and the [petitioner's] chosen forum." *Id.* (citations and quotation marks omitted). Here, QNB and QC's home forum would be Qatar, not this Court. And given that the key event underlying this Petition against Perles occurred in the Southern District of Florida—namely, representation of the Sotloffs in the Sotloff Action—there is indeed an "insubstantial factual nexus" between the Petition and the District of Columbia. *See also id.* ("[T]he fact that the Defendants are located in the District of Columbia does not create a substantial factual nexus between [the Petition] and the District of Columbia."). Petitioners' choice of forum should thus be afforded no deference.

Respondent's choice of the Southern District of Florida, on the other hand, aligns well with the other private interest factors. The claims at the heart of the Petition arise out of the underlying

action in the Southern District of Florida.  The parties and the Court in the Southern District of Florida are all already familiar with the facts of the underlying dispute, the nature of the discovery the Petitioners seek, and the prior discovery litigation between Petitioners and the Sotloffs that resulted in the Confidentiality Order.  The Southern District of Florida would be as equally convenient for the Petitioners as the District of Columbia, and would be preferable to Perles, as evidenced by this Motion to Transfer.  Finally, the Southern District of Florida would be able to access the core sources of proof in this case more easily, namely the Transfer Record and the Confidentiality Order that were already addressed in that District.  The private interest factors thus all favor transfer.

The public interest also counsels in favor of a transfer of this matter to the Southern District of Florida if it is not dismissed.  "The public interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."  As in *Barham*, "the most significant [public interest] factor weighing in favor of transferring this case is the presence of [a] closely related" matter in the Southern District of Florida.  496 F. Supp. 2d at 180. The Southern District of Florida's interest is significant where it has retained jurisdiction over QNB and QC to evaluate discovery disputes under the Confidentiality Order like the ones raised by the instant Petition.  That court's interest is even more significant because Petitioners seek to utilize this Petition to evade the Confidentiality Order—an Order which remains in place and which directly governs the disclosure of the discovery Petitioners seek from Perles in the present action.  Further, the "individuals who will be most impacted by the outcome of this case are [ ] residents of South Florida": the Plaintiffs in the underlying action who fear for the safety of their

witnesses.  *W. Palm Beach*, 317 F. Supp. 3d at 156.  The local interest and familiarity weigh heavily in favor of transfer to the Southern District of Florida.

In cases involving "issues of federal law, [ ] the United States District Court for the Southern District of Florida—a federal court—is presumptively competent to decide" those federal issues.  *Id.* (quotation marks omitted).  And there is "no reason to suspect that" the Southern District of Florida "could not accommodate this case," *Barham*, 496 F. Supp. 2d at 180, especially where the Southern District of Florida has a lower pending caseload than the District Court for the District of Columbia.  *See* Serio Decl. Ex. N (showing 665 more pending cases in the District of Columbia than in the Southern District of Florida in the most recent period).  The public interest factors thus all favor transfer.

Given that this Petition could have been brought in the Southern District of Florida, and that the private and public interest factors indicate "that considerations of convenience and the interest of justice support a transfer," if this Court does not outright deny Petitioners Application, it should refrain from ruling on these issues and transfer the Application back to the Southern District of Florida, where these issues can be most appropriately litigated.

## IV.  CONCLUSION

This Court should deny Petitioners' present Application, in full, or, in the alternative, transfer the Application to the Southern District of Florida.

Dated: April 17, 2024

Respectfully submitted,

Robert L. Weigel (*Pro Hac Vice Pending*)
Robert F. Serio (*Pro Hac Vice Pending*)
Jason Myatt (*Pro Hac Vice Pending*)
Trevor Gopnik (*Pro Hac Vice Pending*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave, 47th Floor
New York, NY 10166-0193
(212)-351-4000
rserio@gibsondunn.com

Max E. Schulman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202)-955-8500

*Counsel for Perles Law Firm*

33