IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | 1:24−mc−00035−LLA |

## DECLARATION OF STEVEN PERLES

I, Steven Perles, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury, that the following is true and correct:

1. I submit this Declaration in support of the Perles Law Firm ("Perles")'s opposition to Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity ("QC") (collectively, the "Petitioners")'s *Ex Parte* Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application").

2. All facts set forth in this Declaration are based on my personal knowledge or information provided to me in connection with my work on behalf of Perles.

3. I am the Senior Attorney and Founder of Perles Law Firm, P.C., located in Washington, D.C., which specializes in civil anti-terrorism litigation, suing state sponsors of terrorism as well as corporations and financial institutions that contribute material support to acts of international terrorism.

4. I, along with my colleagues at Perles, brought a federal Anti-Terrorism Act lawsuit against QNB and QC, on behalf of the family of Steven Sotloff, in the United States

District Court for the Southern District of Florida in the case captioned *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (S.D. Fla.) (Middlebrooks, J.) (the "Sotloff Action").

5. In connection with Perles's representation of plaintiffs in the Sotloff Action, Perles was provided with a transfer record (the "Transfer Record") that allegedly documented a transaction in which QNB and QC were asserted to have provided $800,000 in financing to the known Daesh terrorist Fadhel al Salim. The unredacted Transfer Record bears the names and signatures of a number of individuals who purportedly were present and signed as witnesses when al Salim received the $800,000 in cash at a bank in the Republic of Turkey.

6. Pursuant to the Confidentiality Order entered in the Sotloff Action, *see* Exhibit A to the Declaration of Robert F. Serio, dated April 17, 2024 ("Serio Decl.") ("Confidentiality Order"), the unredacted Transfer Record was produced on June 26, 2023, by courier to Designated Outside Counsel of Record to QNB and QC in the Sotloff Action with the designation "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Accordingly, disclosure of the unredacted Transfer Record is limited to Designated Outside Counsel of Record in the Sotloff Action, including Douglas Hallward-Driemeier and Michael G. McGovern from the law firm Ropes & Gray LLP, and John Hillebrecht, Kevin Walsh, Jessica A. Masella, and Michael G. Lewis from the law firm DLA Piper LLP, who are also counsel to QNB and QC in the present Application. Notably, this designation means QNB and QC in-house personnel (and everyone else) are prohibited from reviewing the information appearing only in the unredacted version of the document.

7. A redacted version of the Transfer Record was also produced in the Sotloff Action, and was attached as Exhibit 8 to the Declaration of Douglas Hallward-Driemeier, filed by Petitioners in support of the Application. Dkt. No. 1 Ex. 8. Perles redacted the Transfer Record by removing the names, signatures, and biometric data of the purported witnesses to the $800,000 transaction in order to protect their identities and ensure their safety.

8. Under the terms of the Confidentiality Order, QNB and QC are prevented from using any of the information appearing in the unredacted transfer record (i.e. the identity of such witnesses) for any purpose other than for their defense in the Sotloff Action, which has been resolved. *See* Confidentiality Order § 7.1.

9. The discovery requests contained in the Application would require disclosure to QNB and QC of information for a purpose other than for their defense in the Sotloff Action.

10. The discovery requests contained in the Application would require disclosure to QNB and QC of information sufficient to identify the identity and location of the Anonymous Source as well as the identification of all persons with whom Perles or the Anonymous Source discussed the Transfer Record.

11. If one or more of the witnesses identified in the redacted portion of the Transfer Record in fact was the Anonymous Source, by responding to the discovery requests contained in the Application, Perles would be disclosing such witnesses' identities without restriction in violation of the Confidentiality Order. Disclosure of such information would expose such individuals to the very risks the Confidentiality Order was intended to protect against.

12. Even if none of the witnesses listed on the Transfer Record is in fact the Anonymous Source, revealing such witnesses' identities would violate the Confidentiality Order and subject them to the very safety risks the Order was issued to safeguard. Indeed, the Confidentiality Order covers not only the Transfer Record itself, but also "any testimony, conversations, or presentations by Parties or their Counsel that might reveal" confidential information such as witnesses' identities. *See* Confidentiality Order § 3. In addition, any such conversations would have involved Perles's confidential network of investigators, translators, and experts that it has developed and retained in its efforts to seek redress for victims of terror crimes. Disclosure of their identities would both expose them to safety risks and would afford Petitioners insight into Perles's work product sources and methods.

13. The individuals whose identities might be disclosed, should the present Application be granted, face genuine security risks. I believe this for a number of reasons, including one recent experience which occurred in the context of the Sotloff Action. In 2023, I met with a potential witness and a translator at a law office in France. A participant in that meeting reported to my office and to French police that during this meeting, which occurred in the middle of the afternoon, the translator's car was broken into, various evidentiary materials removed, and a note in Arabic left behind which, when translated, read, "This is a warning."

14. The same individual also reported receiving threats by encrypted audio message, including "Why risk your life for a rotting Jewish corpse?" I understand this comment to be in reference to Steven Sotloff, who was a Jewish American.

Executed on this 17th day of April 2024 in Washington, D.C.

_____
Steven Perles

Executed on this 17th day of April 2024 in Washington, D.C.

_____
Steven Perles