**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 |

Misc. Action No. 24‑35 (LLA)

**<u>MEMORANDUM OPINION</u>**

Petitioners Qatar National Bank and Qatar Charity (the "Qatar Entities") seek an order from this court, pursuant to 28 U.S.C. § 1782, compelling the Perles Law Firm, P.C., to produce limited discovery. ECF No. 1. The Qatar Entities contend that the Perles Firm possesses non-privileged information about the identity or identities of individuals who allegedly forged a bank record that the firm then used in a now-dismissed suit against them. ECF No. 1, at 8-9; *see Sotloff v. Qatar Charity*, No. 22-CV-80726, 2023 WL 6471413 (S.D. Fla. Sept. 29, 2023) (the "Sotloff Action"). The Qatar Entities intend to use the discovered information to initiate international civil and criminal proceedings against the individual or individuals who perpetrated the alleged forgery. ECF No. 1, at 9. For the reasons set forth below, the court will grant the Application.

## I.    BACKGROUND

In May 2022, the Perles Firm served as lead counsel to the family members and estate of deceased American journalist Steven Sotloff ("Plaintiffs") in their case against the Qatar Entities. ECF No. 1-1 ¶ 7; ECF No. 1-4. In the Sotloff action, which was before Judge Middlebrooks in the U.S. District Court for the Southern District of Florida, Plaintiffs brought claims under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*, asserting that the Qatar Entities had facilitated an

$800,000 wire transfer that financed, in part, the execution of Mr. Sotloff.  ECF No. 1-1 ¶ 8; ECF No. 1-3.  Central to their complaint was a one-page "Transfer Record," purportedly created by Ziraat Bank, which reflected that the wire transfer had been sent from the Qatar National Bank account of an individual working on behalf of Qatar Charity to an account in the name of "Fadhel al Salim."  ECF No. 1-1 ¶ 11; ECF No. 1-4 ¶¶ 3, 36, 101-09, 226.  Al Salim, an ISIS terrorist, later ordered the execution of Mr. Sotloff.  ECF No. 1-1 ¶ 13; ECF No. 1-4 ¶¶ 3, 112.

After Judge Middlebrooks denied the Qatar Entities' motion to dismiss for failure to state a claim and for lack of personal jurisdiction, the Qatar Entities asked the court to order production of the Transfer Record, which Plaintiffs had yet to produce.  ECF No. 1-1 ¶¶ 9, 14; *see* ECF Nos. 1-4, 1-5, 1-6.  The Qatar Entities, despite searches of their own records, had been unable to find a record of the transfer.  ECF No. 1-1 ¶ 15.

After the parties filed competing motions for a confidentiality order, the court entered an order which permitted certain materials, including the Transfer Record, to be produced with an "Attorney's Eyes Only" ("AEO") designation.  *Id.* ¶¶ 16-17.[1]  Upon receipt of the Transfer Record, the Qatar Entities identified "indicia of forgery on the face of the document," including misspellings of banking terms, missing information, and a Qatar National Bank SWIFT Business Identifier Code that did not exist at the time the transfer occurred.  *Id*. ¶ 17.  Ziraat Bank also confirmed to Qatar National Bank that it was unable to find any record of the transfer.  *Id*. ¶ 18.

In response, the Perles Firm sought to verify the legitimacy of the document.  After conducting its own investigation, which included speaking with an individual located in Paris, France, who had allegedly witnessed the transaction (the "Anonymous Source") and experts, the

---

[1] A redacted version of the Transfer Record was subsequently made available to the Qatar Entities. ECF No. 1-1, at 4 n.2; *see* ECF No. 1-9.

firm began to doubt whether it would be able to authenticate the document at trial. *Id.* ¶¶ 20-23. For this reason, and because Plaintiffs' claims and the court's personal jurisdiction depended on the Transfer Record, Plaintiffs and the Qatar Entities agreed to file a joint motion to dismiss the action with prejudice. *Id.* ¶ 24. Judge Middlebrooks dismissed the case with prejudice and vacated his previous opinion on the motion to dismiss. *Id.*; ECF No. 1-9.

In March 2024, the Qatar Entities filed the instant Application before this court. ECF No. 1. While originally filed *ex parte*, the court ordered the Qatar Entities to serve the Application to the Perles Firm. ECF No. 3. The Application is now ripe. *See* ECF Nos. 1, 10, 15.

## II.    LEGAL STANDARD

Section 1782 authorizes the district court to order a person who resides or is found within its jurisdiction to give "testimony or [a] statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation . . . . upon the application of any interested person." 28 U.S.C. § 1782(a). A person may not be compelled, however, "to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

In determining whether to grant an application under Section 1782(a), the court must assess "first, whether it is authorized to grant the request, and second, whether it should exercise its discretion to do so." *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005). "A district court has the authority to grant an application when three conditions are met: (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010). "If the applicant satisfies these prerequisites, the district court then turns to the four factors

articulated by the Supreme Court to aid district courts in exercising their discretion." *Id.* These

factors, known as the "*Intel* factors," *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S.

241, 264-65 (2004), are:

> 1. Whether the person from whom discovery is sought is a participant in the foreign proceeding;
>
> 2. The nature of the foreign tribunal and the character of the proceedings;
>
> 3. Whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and
>
> 4. Whether the discovery sought is unduly intrusive or burdensome.

*In re Veiga*, 746 F. Supp. 2d at 17. While consideration of these factors is not mandatory, *see In re DiGiulian*, 314 F. Supp. 3d 1, 7 (D.D.C. 2018), courts routinely rely on them in evaluating

requests under Section 1782, *see In re Kuwait Ports Auth.*, No. 22-MC-64, 2024 WL 4183210,

at *5 (D.D.C. Aug. 6, 2024) (collecting cases).

## III.    DISCUSSION

The Qatar Entities argue that their Application satisfies the statutory requirements of

Section 1782 and that all four *Intel* factors weigh in favor of the court exercising its discretion to

permit discovery. The Perles Firm opposes the Application on the grounds that it is barred by

issue preclusion, fails to meet Section 1782's statutory requirements, and is not a warranted

exercise of the court's discretion. The court agrees with the Qatar Entities.

### A.    Issue Preclusion

As a preliminary matter, the Perles Firm contends that issue preclusion, or collateral

estoppel, bars the Qatar Entities' Application because "[t]he exact same issue Petitioners raise

before this Court—discovery regarding the identities of witnesses to or concerning the Transfer Record—was litigated and ruled on by Judge Middlebrooks."  ECF No. 10, at 11.  Not so.

"Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)).  For issue preclusion to apply: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

The issue before this court is whether the Qatar Entities may seek the production of facts related to the Transfer Record's creation.  In the Florida case, the parties litigated who would be able to access materials designated as "AEO," with Plaintiffs seeking to "control the disclosure . . . to exclude [the Qatar Entities'] 'house counsel' and other persons," ECF No. 11-10 ¶¶ 5-6, and the Qatar Entities disagreeing.  The two issues are not the same.  Furthermore, the instant issue could not have been "actually and necessarily determined" in the Florida case because, at the time that the confidentiality order was issued, the Qatar Entities had not yet had the opportunity to review and question the legitimacy of the Transfer Record or know that the Perles Firm would be unable to authenticate it.  Accordingly, issue preclusion does not apply.

## B.    Section 1782

### 1.    Statutory Requirements

As noted, an applicant must first satisfy the court that it has authority to grant the request under Section 1782(a) by establishing that: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d at 17.    Both parties agree that the Application meets Section 1782(a)'s first requirement—that is the Perles Firm is "found" in the District of Columbia, ECF No. 1, at 11-12; ECF No. 10, at 14—and its third requirement—that the Qatar Entities are "interested persons," ECF No. 1, at 13-14; ECF No. 10, at 14.    The Perles Firm contests only the second requirement, arguing that the Qatar Entities have not established that the discovery sought is "for use in a proceeding before a foreign or international tribunal" because no such proceeding currently exists. ECF No. 10, at 14-18.    The court disagrees.

In assessing Section 1782(a)'s "for use" prong, a proceeding need not be "pending" or "imminent," but only "within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259.    While the court should not "accept an applicant's request on blind faith[,] . . . the burden imposed upon an applicant is *de minimis*," and "district courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding." *In re Veiga*, 746 F. Supp. 2d at 17-18.

The Qatar Entities have met their burden.    They explain that they seek discovery under Section 1782(a) to identify who created the forged Transfer Record so that they can sue them. ECF No. 10, at 12-13.    Because the Qatar Entities "have reason to believe that at least one of those individuals is located in France," they have retained French counsel and plan on bringing, "at a minimum," a civil action based on wrongdoing and a criminal action based on forgery in France. ECF No. 1, at 8; *see* ECF No. 15, at 14.    They represent that if discovery shows that a different

6

jurisdiction is more suitable, they will retain counsel there and pursue similar claims.  ECF No. 1, at 8.

The Perles Firm argues that more is needed.  Specifically, they contend that Section 1782(a)'s "for use" prong requires the Qatar Entities to identify with particularity "who they intend to sue, where they intend to sue them, what claims they intend to bring[,] . . . or when they intend to make their filing."  ECF No. 10, at 17.  The court addresses each in turn.  As to the "who," "Section 1782(a) permits identi[t]y-confirming discovery like this."  *C5 Capital Limited*, No. 24-MC-10, 2024 WL 1701650, at *2 (D.D.C. Apr. 18, 2024); *accord In re Pishevar*, No. 21-MC-105, 2023 WL 207454, at *2 (D.D.C. Feb. 17, 2023) (holding that the requested discovery was "'for use' in . . . contemplated proceedings because the identity of the UK Source [was] instrumental to pursuing [Petitioner]'s claims").  The "where" is France and the claims are both civil and criminal.  *See* ECF No. 15, at 14; ECF No. 1, at 12-13.  And the "when" is "immediately" upon receiving the necessary information.  ECF No. 15, at 14.  The Qatar Entities' Application is thus a far cry from the "fishing expedition" the Perles Firm asserts it to be, and it is instead well within the confines of Section 1782(a).  *See In re Lucille Holdings Pte. Ltd.*, No. 21-MC-99, 2022 WL 1421816, at *10 (D.D.C. May 5, 2022) (explaining that "[r]equiring a section 1782 applicant to show that a foreign proceeding is its reasonable contemplation . . . helps to forestall . . . fishing expeditions").  Accordingly, the Qatar Entities have satisfied each of Section 1782(a)'s requirements, giving this court the authority to grant the Application.

## 2.    Discretionary Factors

The court must next determine whether to exercise its discretion under Section 1782(a). That decision is guided by the statute's "twin aims" of providing "efficient means of assistance to participants in international litigation and . . . encourag[ing] foreign countries by example to

provide similar means of assistance to our courts." *Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.*, 760 F. Supp. 2d 109, 114 (D.D.C. 2011), *aff'd*, 473 F. App'x 2 (D.C. Cir. 2012).  As a reminder, the four discretionary *Intel* factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel Corp.*, 542 U.S. at 264-65.

The Qatar Entities argue that the first *Intel* factor weighs in favor of granting discovery because the Perles Firm will not be a participant in any foreign proceeding.  ECF No. 1, at 15.  The Perles Firm responds that the Sotloffs are "the real target of the discovery sought in the present Application" and that "there is no way" to determine whether the Qatar Entities would name the Sotloffs in future litigation.  ECF No. 10, at 19-20.  The court finds no basis to conclude that the Sotloffs will be participants in the foreign proceeding or the target of discovery.  The Qatar Entities clearly seek discovery from *the Perles Firm*, not the Sotloffs, in order to identify the alleged forgers and bring a suit against them.  ECF No. 1, at 15; ECF No. 15, at 15-16.  Accordingly, the first *Intel* factor militates in favor of granting discovery.

On the second *Intel* factor, "[t]he party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought."  *In re Veiga*, 746 F. Supp. 2d at 23-24 (quoting *In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010)).  Barring such authoritative proof, courts "presume that foreign tribunals will be receptive to

evidence obtained [under Section 1782]." *Mussington v. Deborah Brosnan & Assocs.*, 708 F. Supp. 3d 1, 18 (D.D.C. 2023); *accord In re Barnwell Enters.*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017) (finding that the second *Intel* factor weighs in the applicant's favor unless there is a "*clear and unequivocal indication* that the foreign tribunal would not be receptive to the evidence sought" (quoting *In re Veiga*, 746 F. Supp. 2d at 24) (emphasis added)).  While the Perles Firm argues that it cannot assess the receptivity of the foreign tribunal because the Qatar Entities "do not know where they intend to file the present suit," ECF No. 10, at 20, the court notes that the Qatar Entities have identified at least one jurisdiction—France—and the Perles Firm has not presented any "authoritative proof" to show, nor does the court have any reason to believe, that France would reject the evidence.  Thus, the court finds that the second *Intel* factor weighs in favor of granting the Qatar Entities' request.

As to the third *Intel* factor, the Qatar Entities assert that the Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  ECF No. 1, at 16 (alteration in original) (citing *Intel Corp.*, 542 U.S. at 265). The Perles Firm contends otherwise, arguing that the request conceals an attempt to circumvent the United States' proof-gathering restrictions because it seeks discovery in contravention to Judge Middlebrooks's confidentiality order, was made in bad faith, puts witnesses at risk, and contravenes the attorney work-product doctrine.  ECF No. 10, at 20-27.[2]  The court takes each argument in turn.

The Perles Firm first argues that the Qatar Entities seek discovery "already subject to an existing court order to which the Petitioners remain bound." *Id.* at 21.  Not so.  Judge Middlebrooks's

_____

[2] The Perles Firm also argues that the Qatar Entities "fail to sufficiently identify the jurisdiction in which their prospective suit would be brought," ECF No. 10, at 23, but the court has already rejected that argument above.

confidentiality order pertained to the Transfer Record document itself. *See id.* at 7-8. Having concluded that the Transfer Record is a forgery, the Qatar Entities now seek to investigate the circumstances of how it came to be. *Id.* at 9-10. In any event, if the Perles Firm believes that the Application would run afoul of the confidentiality order, the confidentiality order affords a remedy, providing that "[i]f the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action . . . as [AEO] before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission." ECF No. 11-1 ¶ 8.

The Perles Firm next contends that the Qatar Entities made their request in bad faith because they "failed to include the details of the Confidentiality Order or related briefing." ECF No. 10, at 23. Again, the court disagrees. In their Application, the Qatar Entities reference the order, *see* ECF No. 1, at 6; ECF No. 1-1 ¶ 16, and the court was easily able to locate it on the public docket. Sotloff Action, ECF No. 88. The court does not discern bad faith.

The Perles Firm further argues that the Application poses "undue risks to the safety and welfare of the individuals who served as witnesses, or as Perles's investigators, translators, and consultants in relation to the Sotloff Action." ECF No. 10, at 24. In support of this, the Perles Firm explains that "during the course of the investigation related to the Sotloff Action, the translator for a potential witness [of the purported transfer] reported to French police that they were intimidated and outright threatened by an individual acting, if not at the *behest* of [the Qatar Entities], then at least against the Sotloffs' interest." *Id.* at 24-25; ECF No. 12 ¶¶ 13-14. But, as the Qatar Entities point out, the declarant "makes no attempt whatsoever to attribute the events described to [them]." ECF No. 15, at 18. Without more substantiation, the court is not inclined give much weight to this statement.

The Perles Firm also argues that the Qatar Entities are "attempt[ing] to side-step attorney work-product protections" by requiring disclosure of "[t]he identity of persons interviewed by counsel." ECF No. 10, at 26. The firm relatedly contends that discovery would risk prejudice to its other clients by disclosing its "research methodology and network of associates." *Id.* at 3. The Qatar Entities' discovery request most resembles the request made in *Savignac v. Jones Day*, 586 F. Supp. 3d 16 (D.D.C. 2022). In *Savignac*, the court found that identifying individuals with whom the lawyers consulted regarding a claim's central issue did not reveal privileged work product. *Id.* at 18. The court explained that, in the situation before it, the list of names alone did "not ask [the party] to reveal anything about their strategy for the case, [nor did it] seek to borrow the benefit of [the party's] trial preparation to save [the other party] from engaging in the litigation-related leg work." *Id.* at 20. The court further stated that "although a list of witnesses an attorney has interviewed in anticipation of litigation can, at times, permit a requesting party impermissibly to glean its opponent's strategy, that is not the case here"—instead, the request was "an effort to identify witnesses who might have factual information relevant to an important issue in the case." *Id.* at 19-21. The same is true here. The Qatar Entities do not seek discovery in order to glean the Perles Firm's strategy in the Sotloff Action or in other litigation, but rather to investigate a key claim in a foreign proceeding. In sum, the third factor counsels in favor of granting the Qatar Entities' Application.

In applying the fourth and final *Intel* factor, the court looks to whether the discovery sought is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. The standard in this context is substantially the same as under the Federal Rules of Civil Procedure. *See In re Pishevar*, 2023 WL 2072454, at *4 (collecting cases). Courts interpret this factor to include "the relevance of the requested discovery to the foreign proceeding." *In re DiGiulian*, 314 F. Supp. 3d at 9 (quoting *In*

*re an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proc.*, No. 17-CV-1466, 2017 WL 370828, at *4 (D.D.C. Aug. 18, 2017)).

Here, the Qatar Entities seek "two requests for documents and six deposition topics in order to ascertain the identities of the Forgers." ECF No. 15, at 17. The Perles Firm does not dispute that the request is narrowly targeted but argues that it is "unduly intrusive" because "[t]he witnesses who came forward did so based on the understanding that their identities would be protected" and "[a]ll conversations . . . took place under the normal expectation that such conversations are protected by the attorney work product doctrine." ECF No. 10, at 28. The court has already rejected both of these arguments as they apply to the third *Intel* factor, and it need not repeat its conclusions here.[3]

## IV.    CONCLUSION

For the foregoing reasons, the court will grant the Qatar Entities' Application, ECF No. 1. A contemporaneous order will issue.

_____

LOREN L. ALIKHAN
United States District Judge

Date:   February 10, 2025

---

[3] In its brief, the Perles Firm alternatively sought to have this matter transferred to the Southern District of Florida. ECF No. 10, at 29-32. That request is moot in light of this court's decision to grant the Qatar Entities' Application.