IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | No. 1:24-mc-00035-LLA |

**RESPONDENT PERLES LAW FIRM, P.C.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR ENTRY OF A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    I. Good Cause Exists For Including An AEO Confidentiality Designation............................. 5

        A.  The Risks Of Harm Posed By Disclosure Is Substantial ................................................. 5

        B.  Perles's Proposed Protective Order Is Narrowly Drawn And Precise .......................... 10

        C.  There Are No Alternative Means Of Protecting The Public Interest ............................. 11

    II. A Sister Federal Court Has Already Found Good Cause For A Protective Order
    Relating To The Same Information Requested Here.................................................................. 11

    III. Good Cause Exists For Limiting Where And Against Whom Petitioners May Sue In
    The Contemplated Litigation ..................................................................................................... 13

    IV. Good Cause Exists For Requiring Petitioners To Seek The Maximum Possible
    Confidentiality Protections Available In The Contemplated Litigation.................................. 15

CONCLUSION............................................................................................................................ 15

i

## TABLE OF AUTHORITIES

### Cases

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017)..................................................................................14

*Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*,
    622 F.2d 496 (10th Cir. 1980) .................................................................................9

*Alexander v. FBI*,
    186 F.R.D. 54 (D.D.C. 1998).........................................................4, 5, 8, 10, 11

*D'Onofrio v. SFX Sports Grp., Inc.*,
    256 F.R.D. 277 (D.D.C. 2009)..................................................................5, 10, 11

*Danzy v. IATSE Loc. 22*,
    2021 WL 6753478 (D.D.C. Sep. 16, 2021) ...............................................................3

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*,
    339 F.R.D. 334 (D.D.C. 2021)...................................................................................8

*Doe v. District of Columbia*,
    697 F.2d 1115 (D.C. Cir. 1983).......................................................5, 6, 7, 8, 10, 11

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*,
    296 F.R.D. 3 (D.D.C. 2013).................................................................................3, 13

*Kiobel v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018)....................................................................................12

*United States ex rel. Purcell v. MWI Corp.*,
    209 F.R.D. 21 (D.D.C. 2002)..........................................................................3, 5, 11

*In re SBK ART LLC*,
    168 F.4th 68, 82 (2d Cir. 2026) ...............................................................................12

*Sotloff v. Qatar Charity*,
    2023 WL 6471593 (S.D. Fla. June 23, 2023) .....................................................11, 12

*United States v. All Assets Held at Bank Julius Baer & Co.*,
    270 F. Supp. 3d 220 (D.D.C. 2017) ..........................................................................9

### Statutes

28 U.S.C. § 1782.......................................................................................................1, 12

### Rules

8A Wright & Miller's Federal Practice and Procedure (3d ed. 2008)............................9

Fed. R. Civ. P. 26.................................................................................................1, 3, 8

**PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Respondent Perles Law Firm, P.C. ("Perles") moves this Court for the entry of its proposed protective order ("Perles's Proposed Protective Order"), [1] which will govern the use, disclosure, and handling of confidential information produced in response to the application for discovery pursuant to 28 U.S.C. § 1782 (the "Application") filed by Petitioners Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity ("QC") (collectively, the "Petitioners").

In an effort to comply with its obligations pursuant to this Court's grant of Petitioners' Application, ECF No. 21, Perles has offered to provide Petitioners with the identities and last-known-location information of the three individuals (collectively, the "Fact Witnesses and the Foreign Attorney") in the chain of custody of the bank transfer record at the center of this dispute (the "Transfer Record"), pursuant to the entry of Perles's Proposed Protective Order.  Despite conveying repeatedly to this Court that Petitioners were interested "only in learning who created this [alleged] forgery and how it came to be provided to [Perles]," *see, e.g.*, ECF No. 15 at 17, Petitioners have now rejected Perles's offer of that very information—all because they want access to irrelevant and cumulative discovery (such as the identities of non-testifying experts consulted by Perles in the Sotloff Action) free from the reasonable safeguards Perles has proposed. [2] Petitioners' insistence on further needless motion practice lays bare that the true intention of their Application was never to pursue the individuals who allegedly defamed them—but rather to invade Perles's confidential attorney work product and harass Perles as retribution for its anti-terrorism

---

[1] Perles's Proposed Protective Order and the protective order proposed by Petitioners ("Petitioners' Proposed Protective Order") are attached as Exhibits A and B, respectively, to the Declaration of Robert F. Serio in support of this Motion.  A redline showing the differences between Perles's Proposed Protective Order and Petitioners' Proposed Protective Order is attached as Exhibit C to the Declaration of Robert F. Serio in support of this Motion.

[2] The "Sotloff Action" refers to the case captioned *Sotloff v. Qatar Charity, et al.*, No. 22-cv-80726 (S.D. Fla.) (Judge Donald M. Middlebrooks presiding), which was filed by the family of Steven Sotloff against QNB and QC.

work.

Entry of Perles's Proposed Protective Order is necessary because of the seriousness of the risks to the individuals whose identities will be disclosed in response to Petitioners' discovery requests and the threat that Perles's confidential work product will be exposed. In particular, the newly available evidence of retaliation against Basel Kamal Hashwah, as detailed in Perles's Opposition to Petitioners' Motion to Compel, ECF No. 29 at 9–11, reveals that the risks facing individuals perceived as opposing the interests of Petitioners or the Qatari government are not speculative. Moreover, the parties—as well as much of the confidential information sought by Petitioners here—are subject to the confidentiality order (the "Florida Confidentiality Order") entered by the United States District Court for the Southern District of Florida (the "Florida Court") in the Sotloff Action. Thus, Perles maintains that the terms of any protective order entered in this matter should comport with the Florida Confidentiality Order—so as not to force Perles to violate the order of a sister federal court.

Given the myriad risks associated with Petitioners' discovery requests, there is good cause to adopt the confidentiality safeguards found in Perles's Proposed Protective Order, which include an attorneys' eyes only ("AEO") confidentiality designation, reasonable restrictions on where and against whom Petitioners may bring their contemplated foreign proceeding (the "Contemplated Litigation"), and a requirement that Petitioners pursue the maximum confidentiality protections available in the Contemplated Litigation. Although Petitioners argue that Perles's proposed terms will frustrate their ability to bring their Contemplated Litigation, Perles's Proposed Protective Order does not seek to impede their Contemplated Litigation. Quite the opposite—Perles recognizes that this Court has issued a ruling permitting Petitioners to use § 1782 discovery to pursue their Contemplated Litigation. To that end, Perles's Proposed Protective Order expressly

permits Petitioners—through their outside counsel—to use discovery from this matter to prosecute their Contemplated Litigation, subject only to reasonable confidentiality safeguards designed to prevent the widespread disclosure of what Perles believes to be sensitive information. Petitioners' Proposed Protective Order, on the other hand, is so permissive that it defeats the very purpose of having a protective order in the first place.[3]

At bottom, the confidentiality safeguards at issue here are reasonable—and reflect Perles's serious concern that Petitioners' Proposed Protective Order fails to protect the safety of those individuals whose identities will be disclosed in response to Petitioners' discovery requests and will not safeguard Perles's attorney work product. Given these stakes—not just to Perles, but also to future victims of terror financing who may be discouraged to come forward based on Petitioners' tactics here—Perles respectfully requests that this Court enter Perles's Proposed Protective Order.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(c)(1) authorizes this Court "for good cause" to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This Court "possesses broad discretion in issuing a protective order and in determining what degree of protection is required." *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 27 (D.D.C. 2002) (citations omitted). Courts balance "the burden to the moving party against the requestor's need for, and relevance of, the information sought," *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (citation omitted), and consider factors, such as "the harm which disclosure would cause to the party seeking to protect the information," *Danzy v. IATSE Loc. 22*, 2021 WL 6753478, at *2 (D.D.C. Sep. 16, 2021)

---

[3] Petitioners have made clear that they will oppose even the most basic confidentiality safeguards. For example, Petitioners rejected a proposed provision clarifying that any individual with access to protected material has a duty to not share that information with persons not authorized to access such protected material. *See* Serio Decl. Ex. C at 12 (¶ 37).

3

(citation modified).  The party requesting the protective order bears the burden of showing good cause.  *Alexander v. FBI*, 186 F.R.D. 54, 57 (D.D.C. 1998).

## ARGUMENT

Both parties acknowledge that a protective order is necessary to protect confidential information that may be subject to disclosure pursuant to Petitioners' discovery requests.  Even though Perles's Proposed Protective Order would effectively free Petitioners from the Florida Confidentiality Order's use limitations and allow them to share confidential information with court and law enforcement personnel in the Contemplated Litigation, Petitioners maintain that Perles's Proposed Protective Order is still too restrictive.  With the parties unable to agree on the key terms of a protective order, Perles urges this Court to find good cause to enter Perles's Proposed Protective Order, which differs from Petitioners' by: (1) restricting the disclosure of information designated as "Highly Confidential – Attorneys' Eyes Only" to outside counsel; (2) limiting Petitioners' Contemplated Litigation to exclude (a) actions initiated in Qatar and (b) actions against Perles or the plaintiffs in the Sotloff Action; and (3) requiring Petitioners to pursue the maximum confidentiality protections available in the forum of the Contemplated Litigation.[4]

Here, the Fact Witnesses and the Foreign Attorney—as well as Perles and its dedicated network of investigators, translators, and expert consultants who assist it with its docket of civil anti-terrorism cases ("Perles's Support Personnel")—would face the risk of serious harm if this identifying information was exposed without adequate confidentiality safeguards.[5]  These risks constitute good cause for the entry of Perles's Proposed Protective Order, which prioritizes safety

---

[4] The confidentiality safeguards proposed by Perles would apply to the instant action; the Contemplated Litigation; and any "Collateral Litigation," as defined in Perles's Proposed Protective Order, *see* Serio Decl. Ex. A ¶ 3.

[5] Perles maintains that information concerning its Support Personnel should not be disclosed under any circumstances. But if this Court orders such disclosure, then Perles respectfully requests that disclosure be subject to an AEO confidentiality designation.

and protects Perles's work product.

**I.    Good Cause Exists For Including An AEO Confidentiality Designation**

Given that Petitioners' Proposed Protective Order would present serious risks to the safety of individuals associated with this matter and expose Perles's work product, an AEO confidentiality designation is necessary here.  Courts in this Circuit evaluate three criteria when considering a request for a protective order with an AEO confidentiality designation: (1) whether "'the harm posed by [disclosure] [is] substantial and serious"; (2) whether the order is "narrowly drawn and precise"; and (3) if there are "no alternative means of protecting the public interest which intrudes less directly on [attorney-client relations].'" *Doe v. District of Columbia*, 697 F.2d 1115, 1120 (D.C. Cir. 1983) (quoting *In re Halkin*, 598 F.2d 176, 191 (D.C. Cir. 1979)).  However, when the party opposing the protective order would not be prejudiced by the restriction, the need to show harm is lessened.  *See Alexander*, 186 F.R.D. at 58.  In fact, courts have adopted AEO provisions on a showing that the producing party would suffer harm from the "unrestricted release of . . . information and trade secrets" alone, where the requesting party was still "able to litigate its case fully." *Purcell*, 209 F.R.D. at 28.

**A.  The Risks Of Harm Posed By Disclosure Is Substantial**

By disclosing identifying information regarding the Fact Witnesses and the Foreign Attorney and those Support Personnel with whom Perles discussed the Transfer Record, Perles could incur serious harm in the form of (1) risks to the disclosed individuals' safety, and (2) the disclosure of attorney work product.  *See Doe*, 697 F.2d at 1120–21 (finding potential retaliation a "substantial and serious harm"); *D'Onofrio v. SFX Sports Grp., Inc.*, 256 F.R.D. 277, 279 (D.D.C. 2009) (finding good cause existed to designate attorney work product AEO).

**i.  Risks To Safety**

Approval of a protective order with an AEO confidentiality designation does not require

an explicit finding that any acts of intimidation, harassment, or threats of violence were undertaken with the help or express approval of Petitioners, their agents, or sympathizers. Instead, courts have found that "the harm posed by [disclosure] [is] substantial and serious" where there is a "danger of retaliation to which [individuals] *would be* exposed if [the requesting party] learned of allegations they made in the course of discovery." *Doe*, 697 F.2d at 1120–21 (emphasis added).

Such danger of retaliation is prevalent here. The Qatari government—which has significant control and influence over Petitioners—has a long history of associating with and supporting terrorist entities. ECF No. 30-15 at 5; ECF No. 30-16; ECF No. 31 ¶¶ 28–30, 32. Even more troubling, the Qatari government's human rights record includes well-documented allegations of retaliation against individuals who have spoken out against the government and the individuals and entities associated with it. ECF No. 31 ¶¶ 19–28.

As Perles has previously detailed, *see generally* ECF No. 29, Perles has recently learned of circumstances suggesting that the Qatari government induced the Omani government to unlawfully detain Basel Kamal Hashwah, a U.S. national and lead plaintiff in a U.K. civil action against QNB and other entities associated with the Qatari government (*Hashwah & Others v. Qatar Nat'l Bank & Others* [2023] EWHC (KB), Claim No. KB-2023-001144). ECF No. 31 ¶ 19. According to the allegations in that proceeding, Mr. Hashwah's company entered a 2014 contract to build a hospital in the Comoros Islands, which was backed by a $3 million guarantee check. *Id.* ¶ 20; ECF No. 30-5 at 26. After signing the contract, individuals potentially linked to the Qatari government pressured him to route funds through QNB and Doha Bank (another bank closely tied to the Qatari government) to Al Nusra Front terrorists. ECF No. 31 ¶¶ 21, 23. When Mr. Hashwah refused, he was driven out of business, and, unbeknownst to him, was convicted in absentia for issuing a bad check and sentenced to three years' imprisonment. *Id.*

6

Then, in 2024, while visiting family in Oman, Mr. Hashwah was detained without any articulated reason—likely at Qatar's request—for more than a year. *Id.* ¶¶ 22–26. Omani officials admitted that they were unsure why Mr. Hashwah was being detained. *Id.* ¶ 22. Indeed, Mr. Hashwah's detention was highly abnormal (given that Omani law prohibits provisional detention exceeding two months). *See id.* ¶ 24. Despite an initial denial of extradition by the Omani courts— a non-appealable order under Omani law—Mr. Hashwah was ultimately extradited to Qatar in September 2025, after the Qatari Attorney General pledged to prosecute him only for the alleged bad-check offense. *Id.* ¶¶ 24–25. Upon arrival in Qatar, however, he was charged with six additional unrelated offenses (later dismissed), one of which resulted in a travel ban that has, to this day, prevented him from leaving Qatar. *Id.* ¶ 25.

In addition to this chilling account of retaliation by the Qatari government, the evidence presented by Perles also demonstrates that individuals directly associated with the Sotloff Action have already been the victims of sophisticated intimidation campaigns that have involved surveillance, theft, and threats of violence. Notably, when Perles met with the Fact Witnesses in France in 2023, one of the Fact Witnesses reported to Perles and to French police that their car was broken into, evidentiary materials were stolen, and a handwritten note in Arabic was left behind, which read: "This is a warning." ECF No. 31 ¶ 16. That individual also reported receiving a series of threats by audio message referencing the Sotloff Action. *Id.* ¶ 16.

These incidents demonstrate that Petitioners and affiliated state actors possess the means and willingness to employ intimidation tactics to pressure those who pursue litigation against them. Given the substantial connections and overlap between Petitioners and the Qatari government, the disclosure of identifying information without an AEO confidentiality designation would expose the individuals associated with this matter to "substantial and serious" harm in the form of

7

intimidation and harassment.  *See Doe*, 697 F.2d at 1120.  Moreover, such disclosure "would . . . expose[]" these individuals to a "danger of retaliation" also from members or sympathizers of terrorist groups, who may be acting wholly apart from any direction of the Qatari government.  *See id*. at 1120–21; ECF No. 31 ¶¶ 28–30.  The safety risks here justify the relatively minimal burden associated with maintaining an AEO confidentiality designation.

### ii.  Risks To Perles's Attorney Work Product

A finding of good cause to enter an AEO protective order is also warranted because the information at issue here implicates Perles's work product.  "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys . . . particularly where there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Alexander*, 186 F.R.D. at 58 (citation modified).  Thus, in the event that this Court orders the identification of Perles's Support Personnel, all such identifying information should be designated AEO because that information is "highly sensitive, confidential or proprietary."  *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 341 (D.D.C. 2021) (citation omitted).

At Perles's direction and under its supervision, its Support Personnel analyzed the Transfer Record using their specific expertise.  Thus, any information that such individuals might possess about the creation and dissemination of the Transfer Record would have been derived entirely through their work with Perles, making it core opinion work product that should not be disclosed under any circumstances—let alone without an AEO confidentiality designation.  *See* Fed. R. Civ. P. 26(b)(4)(D) and Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment (stating that (1) experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial; or (2) experts informally consulted in preparation for trial but not retained are non-testifying experts whose identities are protected from disclosure under the

work product doctrine); s*ee also Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 503 (10th Cir. 1980) (holding that both the identities and opinions of non-testifying experts are protected absent a showing of "exceptional circumstances"); 8A Wright & Miller's Federal Practice and Procedure §§ 2032, 2032 n.22 (3d ed. 2008) (explaining that "[t]he Ninth Circuit has not accepted the Tenth Circuit's ruling in *Ager*" but that "the Tenth Circuit's approach has become predominant among courts"); *United States v. All Assets Held at Bank Julius Baer & Co.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) (denying motion to compel and holding that the identities of individuals interviewed by counsel are protected work product).

The willingness of these individuals to assist Perles with its prosecution of civil anti-terrorism cases stems from their confidence that Perles will protect their anonymity. Without an AEO confidentiality designation, widespread disclosure becomes a very real danger. This would expose innocent persons to unnecessary legal and personal risk, and would compromise the integrity of Perles's efforts to advocate on behalf of victims of terror. Accordingly, not only do Petitioners' discovery requests seek to invade Perles's work product, but they also undermine Perles's ability to rely on the expertise of these individuals in future cases.

An AEO confidentiality designation is also appropriate here because Petitioners cannot show that they would suffer any prejudice. Even if Petitioners' outside counsel cannot disclose highly confidential information to their clients, Perles's Proposed Protective Order still permits them to use this information in their Contemplated Litigation and to share key information with court and law enforcement personnel. *See, e.g.*, Serio Decl. Ex. A ¶ 34 (noting that Petitioners may use "Protected Material" in court filings so long as they take all reasonable measures to maintain the maximum possible confidentiality afforded under that jurisdiction's laws); *id.* ¶ 21 (noting that "Protected Material" may be shared with "court, law enforcement and prosecutorial

9

personnel in the jurisdiction(s) which Petitioners seek to bring the Contemplated Litigation"). Indeed, "there need not be a great deal of harm to justify protecting information when doing so would not prejudice the party who will be prevented from seeing the information." *D'Onofrio*, 256 F.R.D. at 280. Because Petitioners "are unable to demonstrate any actual prejudice from their personal inability to review the information that will be provided by" Perles, an AEO confidentiality designation is a reasonable request that will minimize the harms associated with revealing this identifying information. *See Alexander*, 186 F.R.D. at 58.

### B. Perles's Proposed Protective Order Is Narrowly Drawn And Precise

Perles's AEO confidentiality designation refers to discovery material containing extremely sensitive information—*i.e.*, information for which disclosure "create[s] a substantial risk of serious harm that could not be avoided by less restrictive means." Serio Decl. Ex. A ¶ 9. This designation is narrowly tailored to encompass only identifying information that is likely to cause *serious* harm—*i.e.*, materials likely to "provoke[] retribution if communicated" or reveal attorney work product. *See Doe*, 697 F.2d at 1121.

Perles's Proposed Protective Order also provides Petitioner with a mechanism for challenging the confidentiality designation of information produced, which comprises a three-step process of: (1) identifying the challenged material and the basis for objection, (2) meeting and conferring with Perles to discuss the dispute in good faith, and (3) scheduling a telephone conference with the court. Serio Decl. Ex. A ¶¶ 28–29. Under such circumstances, where the proposed protective order provides a mechanism to challenge confidentiality designations, courts in this circuit have granted protective orders with AEO designations. *See Alexander*, 186 F.R.D. at 58 (approving an AEO protective order where the requesting party could "challenge the [AEO] designation on any particular documents specifically identified").

10

### C. There Are No Alternative Means Of Protecting The Public Interest

Because Petitioners are closely connected to the Qatari government, potential injury to Perles, its Support Personnel, and the Fact Witnesses and the Foreign Attorney "cannot be prevented through the use of any device less restrictive of a party's access to [their] lawyer." *Doe*, 697 F.2d at 1120. Notably, where there is no prejudice to the requesting party, this Court has repeatedly approved AEO protective orders without a showing that no alternative means of protecting the public interest exists. *See, e.g.*, *D'Onofrio*, 256 F.R.D. at 279; *Purcell*, 209 F.R.D. at 27–28; *Alexander*, 186 F.R.D. at 58. Nevertheless, such a showing is easily made here.

Given that Qatar is an absolute monarchy, once the information is provided to Petitioners' personnel, there is no way for Petitioners to decline to share it with the Qatari government upon request. *See* ECF No. 29 at 20–21; ECF No. 31 ¶ 32. Moreover, there is no way to ensure that sensitive information could not be accidently leaked or that someone in Petitioners' sprawling business networks, who may happen to harbor terrorist sympathies, would be able to access this information. Thus, other than limiting access to this sensitive information to outside counsel, there is no practical means of preventing confidential information shared with Petitioners from potentially flowing to bad actors. An AEO confidentiality designation is thus necessary.

### II. A Sister Federal Court Has Already Found Good Cause For A Protective Order Relating To The Same Information Requested Here

As Petitioners are well aware, the Florida Court had previously found "good cause" to issue a confidentiality order in the Sotloff Action. *Sotloff v. Qatar Charity*, 2023 WL 6471593, at *2 (S.D. Fla. June 23, 2023). That order governs the same "Protected Material" at issue here. During the Sotloff Action, the Florida Court ordered the plaintiffs to produce the Transfer Record to Petitioners. ECF No. 31 ¶¶ 6–7. However, because of concerns involving the safety of the individuals who witnessed the act of terror financing alleged in the Sotloff Action, the document

was produced pursuant to a confidentiality order, *i.e.*, the Florida Confidentiality Order—which contained an AEO confidentiality designation and use limitations.  *See Sotloff*, 2023 WL 6471593, at *2; ECF No. 30-3 §§ 2.9, 7.1, 7.3.  The Florida Court explained that an "AEO designation is appropriate" where the "release of information presents a clear and obvious security risk." *Sotloff*, 2023 WL 6471593, at *1 (citation modified).  The Florida Court went on to find that safety concerns regarding the disclosure of particular witnesses were "not unfounded," given the ties between the Petitioners, the Qatari government, and the Qatari Royal Family, and the serious allegations of terror financing at issue.  *Id.*

Here, even though the Transfer Record could not be authenticated, Perles respectfully requests that this Court enter Perles's Proposed Protective Order to protect its Support Personnel and the Fact Witnesses and the Foreign Attorney from the same "clear and obvious security risk[s]" that led to entry of the Florida Confidentiality Order.  *Id.* at *1–2.  Indeed, as discussed in greater detail above, since the entry of the Florida Confidentiality Order, Perles has discovered additional evidence demonstrating the risks associated with disclosure.

But even if this Court is not persuaded by the evidence and reasoning underlying the Florida Court's finding of good cause, the public policy in favor of comity between sister district courts counsels that this Court should refrain from adopting any term that would conflict with the Florida Confidentiality Order, which is still in full force and effect.[6]  It "would undermine confidence in protective orders" if this Court were to give Petitioners a free pass to modify the Florida Confidentiality Order through the § 1782 discovery process.  *See Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018); *see also In re SBK ART LLC*, 168 F.4th 68, 82 (2d Cir. 2026) (noting that it would be an "abuse of process" to use § 1782 discovery as "a

---

[6] The Florida Confidentiality Order expressly states that the Florida Court "retain[s] jurisdiction over the Parties" "[e]ven after final disposition" of the Sotloff Action.  ECF No. 30-3 at 5.

workaround" to "evade a confidentiality agreement" (citation modified)).

Because the information sought here is still governed by the Florida Confidentiality Order, including the Order's AEO provisions, adopting Petitioners' Proposed Protective Order would put Perles in the untenable position of having to essentially choose which protective order to comply with. *Cf. Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71 (D.D.C. 2009) (refusing to modify the order of another federal court where "the life of the sealing and protective orders of the courts in that jurisdiction was intended to extend past those courts' judgments").

Perles thus submits that its Protective Order is the only option that permits Petitioners to pursue their Contemplated Litigation while preserving the integrity of the Florida Court's Order.

### III.    Good Cause Exists For Limiting Where And Against Whom Petitioners May Sue In The Contemplated Litigation

In its Proposed Protective Order, Perles includes reasonable restrictions on where and against whom Petitioners may bring their Contemplated Litigation, which Perles maintains is necessary to protecting the integrity of any future proceedings.  Specifically, Perles's proposed definition of "Contemplated Litigation" excludes civil or criminal actions initiated by Petitioners in Qatar and actions against Perles or the plaintiffs in the Sotloff Action.  In assessing these provisions, this Court must balance the "burden" to Perles against the Petitioners' "need for, and relevance of the information sought." *Eidos Display*, 296 F.R.D. at 6 (citation omitted).  As detailed in Section I.A, the Fact Witnesses and the Foreign Attorney would be exposed to serious harm in the form of safety risks—including intimidation and retaliation—if discovery is permitted to proceed without adequate confidentiality safeguards in place.

First, Perles's proposed restriction excepting Qatar as a possible forum for their Contemplated Litigation is reasonable—as it is *limited only to Qatar*, a country that Petitioners have never mentioned as a potential forum.  If Petitioners were permitted to bring their action in

13

Qatar, there is a risk that they could institute a sham investigation or proceeding that would enable them to circumvent the protective order entered by this Court. *Cf. In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (recognizing the possibility that "perversely incentivize[d] parties [could] institute sham litigation as a cover to obtain [s]ection 1782 discovery").

As context, Perles's Proposed Protective Order is designed to give court and law enforcement personnel in the forum of the Contemplated Litigation access to highly confidential material so that Petitioners are not unreasonably burdened in pursuing their action. *See, e.g.*, Serio Decl. Ex. A ¶ 21. But any protective order entered in this action would be rendered meaningless if Petitioners could initiate a sham investigation or proceeding in Qatar and then give the court and law enforcement personnel in that forum access to highly confidential material. The evidence suggests that Qatari courts and law enforcement personnel may not safeguard this information, but instead may instigate retaliatory proceedings, as was done to Mr. Hashwah. ECF No. 31 ¶¶ 19–26. Thus, excepting Qatar as a possible forum for the Contemplated Litigation is necessary to protect the safety of any individual who may be targeted by Petitioners in future litigation.

Second, Perles's proposed restriction excepting Perles (including its Support Personnel) and the plaintiffs in the Sotloff Action from being targeted in Petitioners' Contemplated Litigation is reasonable given Petitioners' prior positions in this matter. In bringing their Application, Petitioners stated that the information sought was needed "in anticipation of filing civil and/or criminal claims in a foreign tribunal against those who perpetrated th[e alleged] fraud." ECF No. 1 at 2. Indeed, Petitioners made clear that Perles "will not be a party to the foreign proceedings." *Id.* at 14. Petitioners also stated that they seek to "hold the [alleged] Forgers, not the Sotloffs, liable," ECF No. 15 at 15–16—a statement explicitly relied on by this Court in granting the Application, ECF No. 21 at 8. Thus, Petitioners represented to this Court that Perles and the Sotloff

14

family (who have already endured so much) will not be targeted, and they should be held to that promise. Anything short of a Court order will be insufficient to protect Perles and the Sotloffs.[7]

In sum, Perles's proposed restrictions regarding where and against whom Petitioners may bring the Contemplated Litigation appropriately balance Petitioners' need to use the information produced in this action—as contemplated in their Application—with the burden to Perles.

## IV. Good Cause Exists For Requiring Petitioners To Seek The Maximum Possible Confidentiality Protections Available In The Contemplated Litigation

Perles's proposed terms requiring that Petitioners seek the maximum confidentiality afforded under the laws of the forum where Petitioners bring the Contemplated Litigation will not prejudice Petitioners' action and will only serve to guard against the safety risks at issue here. *See, e.g.*, Serio Decl. Ex. A ¶ 21. By requesting that Petitioners seek the "maximum possible confidentiality afforded," *id.*, Perles merely seeks to ensure that individuals subject to Petitioners' discovery requests will not face serious harm if the information produced in this action is disseminated to the Qatari government or terrorist actors. Under Perles's Proposed Protective Order, Petitioners still maintain the ability to use information obtained from the discovery requests in the Contemplated Litigation. The minor procedural burden associated with seeking the confidentiality protections available in the Contemplated Litigation pales in comparison to Perles's safety concerns.

## CONCLUSION

In light of the foregoing, Perles respectfully requests that this Court grant Perles's Motion for Entry of a Protective Order and enter Perles's Proposed Protective Order (attached as Exhibit A to the Declaration of Robert F. Serio).

---

[7] Petitioners' Proposed Protective Order states that they "*do not intend* to pursue civil and/or criminal claims against the plaintiffs in [the Sotloff Action]." Serio Decl. Ex. B ¶ 4 (emphasis added). But this statement is not a binding and enforceable promise.

Dated: March 19, 2026

Respectfully Submitted,

*/s/ Robert F. Serio*
Robert L. Weigel (*pro hac vice*)
Robert F. Serio (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166
Telephone: (212) 351-4000
rweigel@gibsondunn.com
rserio@gibsondunn.com

*Counsel for Respondent Perles Law Firm, P.C.*