**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:24-mc-00035-LLA |

**PETITIONERS' RESPONSE TO RESPONDENT PERLES LAW FIRM'S
MOTION FOR ENTRY OF PROTECTIVE ORDER**

Perles[1] continues to advance positions that are contrary to this Court's and the D.C. Circuit's earlier rulings, as well as other established D.C. Circuit case law.  While Petitioners' motion for protective order ("Pets. Mot.," ECF No. 41) details the flaws with Perles's proposed protective order, Petitioners further respond here to Perles's misguided arguments in its motion for protective order ("Resp. Mot.," ECF No. 42-1).  The Court should deny Perles's motion, grant Petitioners' motion, and enter Petitioners' proposed protective order.  *See* Pets. Mot., Ex. A.[2]

### **ARGUMENT**

**I.      Perles's Flawed Analysis of the *Doe* Criteria Fails to Support Its Request for an "Attorneys' Eyes Only" Designation.**

Perles agrees that the D.C. Circuit's analysis in *Doe* applies to a "request for a protective order seeking to restrict attorney-client consultation."  *Keaveney v. SRA Int'l, Inc.*, 2017 WL 1842544, at *3 (D.D.C. May 3, 2017) (citing *Doe v. District of Columbia*, 697 F.2d 1115, 1120 (D.C. Cir. 1983)).  Yet, *Doe* expressly cautions that "[d]istrict courts must be . . . chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor," 697 F.2d at 1119; Perles fails to satisfy *Doe*'s criteria.

*First,* Perles cannot establish that disclosure by Petitioners' counsel to their clients will result in "substantial and serious" harm.  *Id.* at 1120.  *Doe* is materially distinguishable in this regard.  In *Doe*, the appellees—inmates at a maximum-security prison—submitted affidavits "detailing the danger of retaliation to which they would be exposed if persons inside the prison

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in Petitioners' motion to compel, *see* ECF No. 27.

[2] Perles also misleadingly claims that "Petitioners have now rejected Perles's offer" to provide the identities of Syrian Nationals and Foreign Attorney.  Resp. Mot. at 1.  Yet, it is Perles who has refused to produce these key identities while the motion to compel and the motions for a protective order remain pending; Petitioners need these identities to pursue their claims in the contemplated proceedings and have only argued that Perles must produce *additional* identities in order to appropriately respond to the Subpoenas—the subject of Petitioners' pending motion to compel. *See* ECF No. 27.

learned of allegations they made in the course of discovery." *Id.* at 1120-21. By contrast, Perles once again relies on a purported intimidation attempt in Paris, *see* Resp. Mot. at 7, which this Court and the D.C. Circuit have already rejected as unattributable to Petitioners, *see In re Qatar Nat'l Bank*, 2025 WL 445188, at *5 (D.D.C. Feb. 10, 2025), *aff'd*, *Qatar Nat'l Bank v. Perles Law Firm, P.C.*, 2025 WL 2945746, at *4 (D.C. Cir. Oct. 17, 2025). Beyond this claim unconnected to Petitioners, Perles repeats vague references regarding the "Qatari government" and redescribes an already dismissed U.K. litigation[3] in order to offensively argue, without evidence, that "Petitioners . . . possess the means and willingness to employ intimidation tactics to pressure those who pursue litigation against them." Resp. Mot. at 7.[4] Perles's unsupported and speculative claims of harm are distinct from those in *Doe* and insufficient to satisfy *Doe*'s first criterion.

Nor can Perles satisfy the first criterion by claiming that there is risk that the discovery sought by Petitioners invades Perles's attorney work product, an argument addressed at length in Petitioners' motion to compel, *see* ECF No. 27 at 13-16, and by this Court and the D.C. Circuit in their earlier decisions, *see In re Qatar Nat'l Bank*, 2025 WL 445188, at *6; *Qatar Nat'l Bank*, 2025 WL 2945746, at *4. As to Perles's newer argument that the Other Fact Witnesses are "non-testifying experts" whose identities are protected from disclosure, Petitioners have similarly explained how these individuals are "essential fact witnesses" with relevant personal knowledge

---

[3] Petitioners earlier addressed that issue in their motion to compel briefing, including by explaining how similar claims have already been considered and rejected by the D.C. Circuit, and do not otherwise constitute "new evidence." *See* ECF No. 32 at 14-15.

[4] Beyond the rejected Parisian claim, Perles does not provide any affidavit—even one under seal—substantiating any harm or risk of harm to any individual involved in *Sotloff* Action, let alone harm that is "substantial and serious" under *Doe*'s first criterion. *Doe*, 697 F.2d at 1120. Courts "will not impose a discovery restriction based on speculation by an unspecified number of unidentified declarants." *FTC v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015) ("Although the court understands that some third parties would prefer to avoid disclosure of their identities, as the Supreme Court observed in *Seattle Times*, the [Federal Rules of Civil Procedure] allow for 'extensive intrusion' into the affairs of third parties." (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984))).

of the fraudulent scheme, and that "Perles cannot categorically shield them from scrutiny by labeling them as non-testifying experts."  ECF No. 32 at 16.[5]

*Second*, Perles's protective order is not narrowly drawn and precise, and therefore fails to satisfy *Doe*'s second criterion. Perles has already represented that it intends to designate all information that it produces in response to Subpoenas as AEO, without "even attempt[ing] to consider or assess the relative purported risk (if any) to each individual, which risk is not even properly established in the first place."  Pets. Mot. at 6.  To that end, Perles's proposed mechanism—by which Petitioners can challenge an AEO designation—is meaningless, as the Parties would inevitably return to this Court upon the production of information, repeating the same arguments. For these reasons, Perles's overbroad AEO designation does not comport with any understanding of "narrowly drawn and precise."  *Doe*, 697 F.2d at 1120.

*Third*, Perles's argument that there is no alternative means of protecting the public interest is based on the grandiose speculation, without any evidence, that "[g]iven that Qatar is an absolute monarchy, once the information is provided to Petitioners' personnel, there is no way for Petitioners to decline to share it with the Qatari government upon request."  Resp. Mot. at 11. Petitioners resoundingly reject this premise as well as Perles's continued, unsupported attacks on their independent statuses as a reputable commercial bank and respected charity.  Moreover, putting aside that Perles has not established with evidence a public interest that requires protecting, Petitioners' proposed order already includes many agreed-upon protections that reflect the appropriate "alternative means of protecting the public interest which intrudes less directly on

---

[5] Moreover, even assuming, arguendo, that the Other Fact Witnesses could fairly be characterized as "non-testifying experts," Perles's continued, one-sided invocation of the *Ager* case misleads the Court as to the purportedly "predominant" nature of that approach, *see* Resp. Mot. at 9; in fact, the majority (and better line) of cases explain that the identities of such non-testifying experts are discoverable, as Petitioners previously highlighted, *see* ECF No. 32 at 17 (collecting cases).

attorney-client relations."  *Doe*, 697 F.2d at 1120.  While Perles claims that it need not show that this criterion is met, *see* Resp. Mot. at 11, the D.C. Circuit in *Doe* found that failure of this criterion alone was dispositive on appeal and therefore rejected the AEO designation.[6]

Overall, Perles's position reflects the fiction that Petitioners' counsel can prosecute the contemplated claims without involvement from their clients, who are the ones *bringing* those very claims.  Perles's position infringes upon Petitioners' "powerful interest in being able to retain and consult freely with an attorney," *Doe*, 697 F.2d at 1119, and this Court should reject it.

**II.    Perles Continues to Rely on the Earlier Florida Confidentiality Order That Has No Bearing on the Discovery Petitioners Now Seek.**

Petitioners have already explained at length—in their opposition to Perles's motion to stay these proceedings—why Perles's continued reliance on the earlier Florida confidentiality order from the *Sotloff* Action is misplaced, *see* ECF No. 36 at 4-6, and this Court and the D.C. Circuit have also already recognized the key differences between those two proceedings, *see In re Qatar Nat'l Bank*, 2025 WL 445188, at *3; *Qatar Nat'l Bank*, 2025 WL 2945746, at *2.  Further, the Supreme Court, without requesting a response, denied Perles's petition for a writ of certiorari premised on the very same arguments.  *See* Denial of Petition, *Perles Law Firm, P.C. v. Qatar Nat'l Bank, et al.*, No. 25-865 (U.S. Mar. 2, 2026).

**III.    There Is No Legal Basis for Perles's Limitations on "Contemplated Litigation."**

Perles argues that it is reasonable to exclude "Qatar as a possible forum for [Petitioners'] Contemplated Litigation," Resp. Mot. at 13, despite the fact that Perles has to date produced no discovery in response to the Subpoenas; as Petitioners have explained, such limitations are premature in this context, *see* Pets. Mot. at 8 n.5.  Moreover, the Court has already ordered that

---

[6] Perles's argument that "sensitive information could . . . be accidentally leaked," *id.*, is yet another speculation that could be true in any context, including if there were an AEO designation in place.

"Petitioners are authorized to use any evidence obtained pursuant to the subpoenas in any additional proceeding arising out of the same facts or transactions underlying Petitioners' Application" (language that Perles inappropriately attempts to delete from Petitioners' definition of "Contemplated Litigation"). ECF No. 22 at 1; *see* Pets. Mot., Ex. B at 2.[7] It is just as premature to exclude Perles from suit at this stage; indeed, discovery could potentially highlight culpable involvement by Perles in the fraudulent scheme, and Petitioners are not bound to avoid suit against Perles, as the D.C. Circuit recognized. *See Qatar Nat'l Bank*, 2025 WL 2945746, at *4 n.1.[8]

## IV.    Perles Fails to Justify Its Premature Attempt to Require That Petitioners Seek Maximum Possible Confidentiality Within the Contemplated Litigation.

Petitioners have already explained in detail how Perles's added requirement that Petitioners seek "maximum possible confidentiality" within the Contemplated Litigation, which has yet to be initiated, is premature and contrary to law. *See* Pets. Mot. at 10-11. Perles, citing no case law, defends this premature and burdensome requirement as a "minor procedural burden." Resp. Mot. at 15. But such a broad requirement could even entail seeking onerous AEO protections in other proceedings, which is not an appropriately "tailor[ed] . . . restraint," *Doe*, 697 F.2d at 1119, nor is that issue ripe at this stage, *see* Pets. Mot. at 10-11.

### CONCLUSION

In light of the foregoing, Petitioners respectfully request that the Court deny Perles's motion, grant Petitioners' motion, and enter Petitioners' proposed protective order. *See id.*, Ex. A.

---

[7] Further, the case that Perles relies on to speculatively argue that Petitioners would institute a "sham investigation or proceeding" in Qatar holds that—if Petitioners obtain Section 1782 discovery for their contemplated French proceeding—"Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise," *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (cited by Resp. Mot. at 14), language similarly reflected in Petitioner's protective order that Perles deleted. *See* Pets. Mot., Ex. B at 2.

[8] As to the plaintiffs in the *Sotloff* Action, Petitioners have already made clear and conceded the point that they do not intend to bring any claims against them. *See* Pets. Mot., Ex. A at 2.

Dated: March 26, 2026                    Respectfully submitted,

*/s/ Douglas H. Hallward-Driemeier*

Douglas H. Hallward-Driemeier (D.C. Bar No. 994052)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4776
douglas.hallward-driemeier@ropesgray.com

Michael G. McGovern (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY  10036-8704
Tel: (212) 596-9000
michael.mcgovern@ropesgray.com

*Counsel for Petitioner Qatar National Bank (Q.P.S.C.)*

John M. Hillebrecht (*pro hac vice forthcoming*)
Kevin Walsh (*pro hac vice forthcoming*)
Jessica A. Masella (*pro hac vice forthcoming*)
Michael G. Lewis (*pro hac vice forthcoming*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Tel: (212) 335-4500
john.hillebrecht@us.dlapiper.com
kevin.walsh@us.dlapiper.com
jessica.masella@us.dlapiper.com
michael.lewis@us.dlapiper.com

*Counsel for Petitioner Qatar Charity*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, a true and correct copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Douglas H. Hallward-Driemeier*
Douglas H. Hallward-Driemeier