IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF QATAR NATIONAL BANK (Q.P.S.C.) AND QATAR CHARITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | No. 1:24-mc-00035-LLA |

**RESPONDENT PERLES LAW FIRM, P.C.'S REPLY
IN SUPPORT OF MOTION FOR ENTRY OF A PROTECTIVE ORDER**

**INTRODUCTION**

Despite Perles's efforts to comply with this Court's grant of the Application and to find common ground with Petitioners—by offering the identifying information of Petitioners' intended litigation targets and proposing a solution that frees Petitioners from the Florida Confidentiality Order's use limitations—they continue to balk at reasonable confidentiality safeguards aimed at mitigating risks to personal safety and the disclosure of Perles's work product.  At bottom, Perles's proposed safeguards are not an obstruction tactic, but a well-tailored compromise that cabins risk and avoids a conflict with the Florida Confidentiality Order.

**ARGUMENT**

**I.     Good Cause Exists For Including An AEO Confidentiality Designation**

Contrary to Petitioners' attempts to downplay the serious safety and work product concerns raised by Perles—and to dramatize the ways in which Perles's Proposed Protective Order supposedly "sweeps" too broadly—Perles's proposed AEO designation represents a fair compromise that enables Petitioners to pursue their Contemplated Litigation while mitigating the risks associated with disclosing sensitive identifying information.

First, Petitioners' discovery requests risk subjecting individuals to serious harm and exposing Perles's work product.  Specifically, Perles remains concerned that its Support Personnel—which include at least one individual with U.S. intelligence experience (*see* ECF No. 29 at 7)—could be targeted by the same bad actors who allegedly targeted the Fact Witnesses. Petitioners write off these concerns as inapplicable to them, but Perles has detailed the Qatari government's history of bad acts and the overlapping interests between the Qatari government and Petitioners, *see, e.g.*, ECF No. 30-28 & 30-29.  Petitioners' brief also fails to even acknowledge the business- and work-product-related harms that would be visited upon Perles if Petitioners could glean strategic information from the identification of Peles's Support Personnel.  *See Alexander v.*

1

*FBI*, 186 F.R.D. 54, 58 (D.D.C. 1998).  Indeed, this scenario also presents an existential threat to Perles's civil anti-terrorism work—as victims, witnesses, and its own Support Personnel may decline to come forward or assist Perles if they fear that Perles will be unable to keep them safe.

Faced with this mountain of evidence showing the "serious and substantial harm" associated with disclosing identifying information without an AEO designation, Petitioners retreat to their oft-repeated and incorrect argument that both this Court and the D.C. Circuit have already considered and rejected Perles's safety-related concerns.  But Petitioners intentionally overlook the new evidence of retaliation—notably, the unlawful detention proceedings against Basel Kamal Hashwah—which Perles was only able to collect and present *post-appeal*.

Second, Perles's Proposed Protective Order is narrowly drawn and precise.  Petitioners complain of Perles's "unilateral" power to make confidentiality designations, but they maintain the right to object to Perles's designations.  *See* ECF No. 42-3 at 8–9.  Indeed, even if this Court ultimately enters Perles's Proposed Protective Order, Petitioners are permitted to request a modification of any provision that they believe has proven too restrictive.  *See United States v. Cudd*, 534 F. Supp. 3d 48, 54 (D.D.C. 2021) (explaining that a party may request modification of a protective order should circumstances change).  Perles, however, does not have the same luxury, because once identifying information is disclosed, it cannot put the proverbial cat back in the bag.

Third, Petitioners' suggestion that an AEO designation is unnecessary because there are other adequate safeguards in place is false.  Restricting highly confidential information to Petitioners' counsel and relevant court and law enforcement personnel is the only way to ensure that identifying information is not inadvertently leaked to bad actors.  If an adequate and less restrictive option existed, Petitioners would have identified it.  Instead, Petitioners have put forth a simulacrum of a protective order designed to free them of any meaningful obligation to keep this

2

information confidential—only further highlighting the need for an AEO designation. *See, e.g.*, ECF No. 42-4 at 7 (Petitioners' Proposed Protective Order stating that protected material may be "made publicly available in connection with Collateral Litigation and Contemplated Litigation").[1]

Given that Perles's AEO proposal includes carveouts for court and law enforcement personnel to access highly confidential material under appropriate safeguards—which would effectively neutralize any risk of prejudice to Petitioners—this Court may find good cause to enter Perles's Proposed Protective Order even without a showing that the third *Doe* prong is satisfied.[2] *Cf. D'Onofrio v. SFX Sports Grp., Inc.*, 256 F.R.D 277, 279 (D.D.C. 2009); *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 27–28 (D.D.C. 2002); *Alexander*, 186 F.R.D. at 58.

## II.    A Sister Federal Court Has Already Found Good Cause For A Protective Order Relating To The Same Information Requested Here

Petitioners urge this Court to disregard the Florida Confidentiality Order because it was entered before the Transfer Record's purported inconsistencies came to light, but that is not an acceptable reason to disregard a sister federal court's binding order.[3]  If Petitioners believed that new developments justified modifying the Florida Confidentiality Order, they could have sought relief from the Florida Court.  Their decision to instead use the § 1782 process to bypass the Florida Court does not mean that this Court should similarly ignore that Order as if it were not entitled to deference and respect.  Ultimately, the Florida Court found good cause to enter the Florida Confidentiality Order, and Perles's Proposed Protective Order is the only option that both respects

---

[1] Given the significant security risks at issue here, Perles maintains that protected material should be limited to the parties in this case.  Non-parties seeking access to protected material can request leave of the parties or this Court.

[2] Although Petitioners argue that they themselves, in addition to their outside counsel, need to review protected material before initiating the Contemplated Litigation, Petitioners have thus far successfully litigated a complex § 1782 action and an appeal—all while under the Florida Confidentiality Order's AEO provisions.  It strains credulity for Petitioners to argue now that an AEO protective order would be a bar to initiating the Contemplated Litigation.

[3] Petitioners note that aspects of Perles's Proposed Protective Order are more restrictive than the Florida Confidentiality Order.  But the safeguards proposed by Perles represent its *present* understanding of the risks at issue, taking account of circumstances arising after entry of the Florida Confidentiality Order.

that Order and gives Petitioners the tools they need for their Contemplated Litigation.

Petitioners also make certain misleading statements about the proceedings in the Florida Court and the Transfer Record that bear correcting. To be clear, the Transfer Record's authenticity has never been conclusively determined by any court. Additionally, neither Perles nor its Support Personnel have any personal knowledge of the entire provenance of the document—as they were not part of the document's original chain of custody. But given the reported threats allegedly levied at the Fact Witnesses, and the fact that new details may emerge about the Transfer Record's provenance, this Court should not assume that the Fact Witnesses and the Foreign Attorney are not worthy of protection—or that Perles does not have a legitimate fear that its Support Personnel could be targeted for their association with Perles or the Sotloff Action. Thus, this Court should consider not only the evidence that informed the Florida Court's finding of good cause—which included more than just an assumption about the Transfer Record's authenticity—but also all the evidence that Perles has collected since the Florida Confidentiality Order's entry.

### III. Good Cause Exists For Limiting Where And Against Whom Petitioners May Sue In The Contemplated Litigation And Requiring That Petitioners Seek The Maximum Possible Confidentiality Protections In The Contemplated Litigation

Although Petitioners assert that the remaining confidentiality safeguards proposed by Perles will "handicap" their Contemplated Litigation, these safeguards are reasonable in light of the serious safety and work product concerns at issue here. First, this Court should adopt Perles's proposal excepting Qatar as a permissible forum for the Contemplated Litigation. *See* ECF No. 42-3 at 3 n.1. Because Qatar functions as an absolute monarchy, ECF No. 31 at 12–13, any provision giving court and law enforcement personnel access to protected material could be used as a backdoor to occasion wider disclosure circumventing the protective order. Although Petitioners argue that any use limitation is premature, Petitioners have continued to make vague and conflicting statements about their intentions for the Contemplated Litigation. For example,

despite giving this Court the impression that they have taken steps to bring the Contemplated Litigation in France, *see* ECF No. 1 at 9–10, Petitioners now argue that a reasonable restriction excepting Qatar is a step too far.  In fact, nothing alleged in either this proceeding or the Sotloff Action suggests the intended defendants or any witnesses are in Qatar.

Second, this Court should prohibit Petitioners from being able to use the Contemplated Litigation to target and harass Perles (including its Support Personnel) and the Sotloff family.  *See* ECF No. 42-3 at 3 n.1.  Petitioners repeatedly asserted that it is the alleged forgers—and not Perles or the Sotloff family—who are the true targets of their Contemplated Litigation.  *See, e.g.*, ECF No. 15 at 8.  Yet now, Petitioners have again moved the goal posts and have rejected a proposed revision which says just that.  *See* ECF No. 42-5 at 2–3.

Finally, Perles's request that Petitioners pursue the maximum confidentiality protections available in the Contemplated Litigation is not a "blanket restriction"—but a well-tailored solution that balances the parties' needs.  Contrary to Petitioners' argument, Perles is not usurping the autonomy of a foreign jurisdiction or forcing a foreign court to supervise compliance with a U.S. protective order by asking Petitioners to merely *pursue* the confidentiality protections *available* in that forum.  If the eventual forum does not have confidentiality procedures for Petitioners to take advantage of, or if the applicable court rejects Petitioners' request, then Petitioners will *still* be able to use the protected material.  Petitioners may prefer to pursue their Contemplated Litigation without any effort to safeguard Perles's confidential information, but their convenience does not equate to good cause to enter their preferred protective order.

**<u>CONCLUSION</u>**

Perles respectfully requests that this Court grant their Motion and enter Perles's Proposed Protective Order (attached as Exhibit A to the Declaration of Robert F. Serio).

5

Dated: March 26, 2026

Respectfully Submitted,

_/s/ Robert F. Serio_
Robert L. Weigel (*pro hac vice*)
Robert F. Serio (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166
Telephone: (212) 351-4000
rweigel@gibsondunn.com
rserio@gibsondunn.com

*Counsel for Respondent Perles Law Firm, P.C.*